**William P. JENNINGS, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Jan. 5, 1996.

Decided May 3, 1996.

William P. Jennings, Pro Se, as Petitioner.

Sarah C. Yerger, Assistant Counsel and Clifford F. Blaze, Deputy Chief Counsel, for Respondent.

Before COLINS, President Judge, and FLAHERTY, J., and RODGERS, Senior Judge.

FLAHERTY, Judge.

William P. Jennings (Claimant) petitions *pro se* for review from an order of the Unemployment Compensation Board of Review (Board) which affirmed the referee's finding of ineligibility for benefits pursuant to Sections 401(c) and 4(w)(1) of the Unemployment Compensation Law (Law).[1] We vacate the Board's order and remand this matter for further proceedings consistent with this opinion.

■ The issues presented by this appeal are (1) whether the referee and Board erred in concluding that Claimant had no covered employment wages in his base year, and (2) whether Philadelphia West Job Center (Job Center) transgressed Claimant's due process rights in orally responding to claimant's inquiry prior to sending a written negative determination, which claimant only received after making a written request for it.[2]

The available facts in this case are not in dispute. Claimant was the only witness present at the hearing. The referee entered all items in the record at the beginning of the hearing without objection. Claimant testified that he was last employed with the U.S. Coast Guard for approximately four-and-one-half years at a final rate of pay of $1,151.10 per month.

By letter to Claimant dated and effective December 20, 1994, from Claimant's Commanding Officer in the Coast Guard, J.D. Garrison (Commander), Claimant was placed on "appellate leave" status, pending appellate review of a Special Court Martial sentence of a punitive discharge from the Coast Guard. (R. Item No. 2a, Paragraph 1.)[3]

According to Commander's letter, Claimant's accrued leave commenced on November 30, 1994, and was exhausted on December 20, 1994, when he was placed on "appellate leave."[4] While on appellate leave, Claimant was ineligible to receive either pay or allowances after exhausting his accrued leave on December 20, 1994, until completion of the

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 801(c), 753(w)(1). The relevant portion of 43 P.S. § 801(c) provides that:

   Compensation shall be payable to any employe who is or becomes unemployed, and who—
   . . . .
   (c) Has made a valid application for benefits with respect to the benefit year for which compensation is claimed and has made a claim for compensation in the proper manner and on the form prescribed by the department. . . .

   A "Valid Application for Benefits" is defined in 43 P.S. § 753(w)(1) as:

   [A]n application for benefits on a form prescribed by the department, which is filed by an individual, as of a day not included in the benefit year previously established by such individual, who (1) has been separated from his work or who during the week commencing on the Sunday previous to such day has worked less than his full time due to lack of work and

   (2) is qualified under the provisions of section four hundred and one (a), (b) and (d).

2. Our standard of review is limited to a determination of whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence. *Estate of McGovern v. State Employees' Retirement Board*, 512 Pa. 377, 517 A.2d 523 (1986); 2 Pa.C.S. § 704.

3. The record contains no facts relating to the nature of the charges or to any evidence upon which the court martial or the sentence therefrom was based.

4. Commander's letter does not disclose his rank and is the only reference in the record to appellate leave, and appears to summarize a required procedure referred to in the heading as: "(a) Personnel Manual, Article 12–D–2, COMDTINST M 1000.6A," which manual is not part of the record. (Record Item 2A, Heading "Ref.")

appellate process.[5] Once reviewed by the Court of Military Appeals, Claimant's court martial sentence may be set aside and charges dismissed or, if the punitive discharge is remitted or set aside, Claimant would be entitled to "full back pay and allowances," less any interim benefits received during appellate leave, specifically mentioning *"unemployment compensation."* The letter also states: "A Report of Separation From Active Duty (DD Form 214) will be completed to the extent possible and signed by you prior to your departure"[6] (R. Item No. 2a, Paragraph 4.) and if a petition for restoration is not granted, Claimant will then be discharged in accordance with his service record. (R. Item 2a.) The referee found that the Coast Guard had not discharged Claimant from service. (R. Item No. 7, Finding No. 4.)

5. There is no evidence in the record to support the referee's Finding of Fact No. 2 that such leave was unpaid. Both Claimant's testimony and Commander's letter clearly indicate that accrued leave was a *paid* leave. (R. Item 2a, Paragraph 2.)

6. There is no evidence that Claimant ever saw or signed DD Form 214. While on appellate leave status, however, Claimant also remains subject to the orders of competent Coast Guard authority, must keep another Commander informed of his current address, and must retain one full uniform. Claimant was also required to surrender his identification card and dependent's identification and privilege cards. The Coast Guard was to issue Claimant temporary replacement cards with a six-month expiration date. The court takes judicial notice that some of these same conditions apply equally to reservists after release from active duty.

7. Job Center correctly determined that Commander's letter informing Claimant of his appellate leave status, fails to constitute a valid military document certifying claimant's release or discharge from service. 20 C.F.R. § 614.1(g)(1981). Although the Commander's letter provided that "a Report of Separation from Active Duty (DD Form 214) will be completed to the extent possible . . . .," the record is void of a DD Form 214, and of any evidence of Claimant requesting it, or of the Job Center or referee explaining what it is and how it can be obtained, or requesting it on an ETA 8–43, described *infra* at footnote 12. The Notice of Determination from Job Center dated 5/22/95 only states as a Finding of Fact: "UNTIL THE DEPT. OF LABOR AND INDUSTRY RECEIVES A DD–214 STATING THAT YOU ARE NO LONGER ATTACHED TO THE U.S. COAST GUARD, THE

On March 26, 1995, Claimant filed an application for unemployment compensation benefits. On May 22, 1995, Job Center issued a Notice of Determination, finding Claimant was "still attached to the Coast Guard." The Job Center's notice further advised Claimant that the letter presented from his Commander was not "a valid document for unemployment compensation purposes."[7] (R. Item No. 3.)

On June 5, 1995, Claimant filed a petition for appeal of Job Center's May 22, 1995 determination. After a hearing, the referee issued a decision affirming Job Center's determination and denying benefits. The referee found that Claimant did not have a valid application for benefits because he had no covered wages in his base year.[8] Thereafter, the Board adopted referee's Findings of Fact and affirmed referee's decision. This appeal followed.

AGENCY CANNOT PROCEED WITH PROCESSING A NOTICE OF FINAL DETERMINATION."

Claimant's handwritten letter or memorandum of 4/26/95 clearly shows Claimant's confusion over what constitutes a DD–214, why he is unable to furnish the form and why his Commander's letter is not sufficient to explain the problem:

Ms. Connor placed me in Computer I refused to provide DD–214 Document. This information is incorrect I supplied document from United States Coast Guard (employer) in which thoroughly explain I do not possess a DD–214. . . . I keep hearing that I'm not eligible because I don't have a DD–214. This confuses me since I have not received no official response in writing to support I am not eligible.

R. Item No. 10, Page 5. The letter was introduced into evidence by the referee at the beginning of the hearing without objection along with all other items in the record.

8. Section 401(a) provides that compensation shall be payable to any employee who is or becomes unemployed, and who has, within his base year, been paid wages for employment as required by Section 404(c) of this Act. The referee does not explain in his opinion why Claimant's wages for four and one-half years before December 20, 1994, did not constitute "covered" wages in Claimant's base year.

The relevant portion of 43 P.S. § 801(a) provides:

Compensation shall be payable to any employe who is or becomes unemployed, and who—
(a) Has, within his base year, been paid wages for employment as required by section 404(c) of this Act. . . .

■ Under federal law, the unemployment compensation authorities of states are empowered to act as agents of the federal government in extending benefits to covered federal employees. 5 U.S.C. § 8502; *Rosler v. Unemployment Compensation Board of Review,* 116 Pa.Cmwlth. 604, 542 A.2d 624 (1988). Title 5 of the United States Code (Code), *as amended by* Pub.L. No. 94–566, 90 Stat. 2667 (5 U.S.C. §§ 8521–8525)(1995), provides for a program of unemployment compensation for unemployed persons who become separated from the Armed Services. Federal military employees, such as Claimant, may receive unemployment compensation benefits if discharged or released from the service under honorable conditions.[9]

The referee refused to assign Claimant's Coast Guard wages as covered base year wages pursuant to 43 P.S. § 801(a). The Board contends in its brief that, because Claimant has not been discharged or released from military service, his Coast Guard wages do not qualify as "federal military wages." (Respondent's brief, pp. 6, 7.)[10] There is, however, no substantial evidence nor a finding by referee that Claimant was not, in effect, released from active duty, when the Coast Guard placed him on appellate leave.

The Board examines Claimant's eligibility for unemployment compensation benefits pursuant to Title 5, Chapter 85, Subchapter II of the Code, entitled "Unemployment Compensation—Ex–Servicemen." *See infra,* footnote 9. However, Job Center held that Claimant was not an ex-serviceman but still legally attached to the Coast Guard pursuant to his appellate leave status. *See supra,* footnote 7.

■ Claimant's current employment status is similar to an involuntary, indefinite suspension without pay in the "civilian" sector, which does not necessarily preclude un-employment benefits if such suspension results through no fault of the employee. *Wallace v. Unemployment Compensation Board of Review,* 83 Pa.Cmwlth. 327, 476 A.2d 1028 (1984). As the record contains no facts pertaining to Claimant's court martial and there appears to be no federal finding as to Claimant's discharge or release, we cannot determine if Claimant's appellate leave status is due to any fault of his own. Fault cannot be presumed from the mere mention of a court martial sentence which is on appeal. In fact, Commander's letter states in paragraph 6:

> Regardless of the nature of the discharge awarded after the completion of appellate review, your presence will not be required to complete the separation processing unless a discharge Under Other Than Honorable Conditions is contemplated.

(R. Item No. 2a, Paragraph 6.) Thus, it appears possible that Claimant may receive a discharge under honorable conditions upon completion of the appellate review process.

■ In order to effectuate the federal government's agreement with state unemployment agencies, Congress imposed on federal employing agencies the duty of making available to state unemployment compensation agencies such information as is necessary for the determination of federal employee's entitlement to benefits. Such information should include the periods of federal service, the amount of federal wages, and the reasons for termination of federal service. 5 U.S.C. § 8506. The Pennsylvania legislature imposed a similar responsibility on the Pennsylvania Department of Labor and Industry to cooperate with federal employing agencies in the administration of its agreement with the federal government to pay benefits to qualifying federal employees. Sections 207 and 313 of the Law, 43 P.S. §§ 767, 792.

---

9. The relevant portions of 5 U.S.C. § 8521(a) provide:
> (1)'Federal service' means active service (not including active duty in a reserve status unless for a continuous period 90 days or more) in the armed forces ... if with respect to that service—
> (A) the individual was discharged or released under honorable conditions....

10. Federal military wages are defined as all pay and allowances in cash and in kind for federal military services, computed on the basis of the pay allowances for the pay grade of the individual at the time of his or her latest discharge or release from federal military service. 20 C.F.R. § 614.2(h)(1995).

The intent of the state and federal provisions seems clear that in enacting a system whereby payment of unemployment compensation to federal employees would be dispensed through the state, the Congress and the Pennsylvania Legislature intended to provide the state with the necessary information to determine eligibility of benefits.

■ Unfortunately, the record in this case does not contain sufficient information needed for the determination of Claimant's eligibility for benefits. There is no evidence in the record that the Board or any state agency requested any information at all from the Coast Guard pertaining to available facts, if any, of Claimant's court martial from which fault could be determined, the length of Claimant's appellate leave status, or the legal effect of such military status on Claimant's eligibility for benefits.[11] In fact, nowhere in the record is there evidence of any communication at all between the Board or any other state agency and the Coast Guard.[12] The record includes neither a notice of Claimant's application nor a request for separation and wage information that the Job Center normally sends to the separating employer. Section 501 of the Law, 43 P.S. § 821. *Classic Personnel v. Unemployment Compensation Board of Review*, 151 Pa.Cmwlth. 423, 617 A.2d 66 (1992).

Additionally, there is no explanation in the record for the Job Center's failure to contact the federal government in order to clarify whether Claimant's appellate leave status constitutes a release from active duty other than a discharge which would qualify Claimant for benefits. The entire burden of obtaining such federal information was apparently placed on Claimant who made it clear that he was not issued a Form DD–214.[13] In fact, the federal and state statutes regarding exchange of information clearly seem to indicate that the information on Form DD–214 is available to the state whereas there is nothing in the record to indicate it was unavailable or that it would be issued to Claimant.

■ Although we recognize that claimant has the burden of proof to show eligibility for unemployment compensation benefits, we nonetheless find that Job Center erred in not requesting from the federal separation agency, namely the U.S. Coast Guard, the additional information necessary to make a fair determination under the Law when there is no evidence that the needed information is available to Claimant.

We cannot exercise meaningful appellate review of this matter until some effort is made on the part of the unemployment compensation authorities, with or without the cooperation of the Claimant, to obtain information, preferably in the form of federal

---

11. We hold the unemployment compensation authorities' failure to obtain any information regarding Claimant's employment status to be particularly troublesome in light of the fact that Commander's letter stated that *unemployment compensation* benefits will be deducted from Claimant's back pay if Claimant is successful on appeal, thereby indicating to Claimant that he may be eligible for such benefits.

12. The ETA 8–43 is a form used by the Pennsylvania Office of Unemployment Security (OES) to request from military authorities information and/or military documents pertaining to the circumstances of an individual's separation from service for the purposes of making a determination on his eligibility for unemployment compensation. The form itself, however, has been held to lack the significance of a "military document" and information therein does not constitute "federal findings" as to the nature of a separation from military service. Federal findings by an agency of the United States as to the type or nature of discharge are final, conclusive and beyond a state court's power of review. *Weight*

*v. Unemployment Compensation Board of Review*, 81 Pa.Cmwlth. 354, 473 A.2d 737 (1984).

The MA 8–43 Form was held in *Weight* to be the predecessor of the ETA 8–43 Form now used and was used by federal employing agencies to reply to OES' request for the relevant military documents or the other pertinent information relating to the claim for benefits. The MA 8–43 Form has been held to contain "federal findings" which were treated as final and conclusive by a state reviewing court, where Claimant was discharged for cause due to his failure to lose weight. *Deaner v. Unemployment Compensation Board of Review*, 78 Pa.Cmwlth. 431, 467 A.2d 662 (1983). An ETA 8–43 is not contained in the record.

Commander, in his letter dated December 20, 1994, does not state that a DD–214 will be issued to Claimant, but only that Claimant must sign it prior to his departure. There is no evidence that he ever signed or had an opportunity to sign or obtain a copy of a DD 214 Form.

13. *See* Footnote 7.

findings in a military document, setting forth, if possible, the legal effect of claimant's appellate leave status and the available facts regarding Claimant's court martial from which fault may be determined. An effort should be made to obtain information on a form, such as, ETA 8–43 requesting specifically whether Claimant's indefinite appellate leave status without pay or benefits constitutes a separation from active duty which equates to a release or discharge under honorable or other conditions.[14]

∎ Claimant will be eligible for benefits if such federal findings, made by the Coast Guard, describe conditions which comply with the terms of 5 U.S.C. § 8521(a). Federal findings with respect to employment matters, including the reasons for Claimant's separation, are final, conclusive and beyond our powers of review. *Deaner*, citing 20 C.F.R. at 614.4 n. 3 and 20 C.F.R. 614.8. Accordingly, we vacate the Board's order and remand this matter for the obtaining of additional information necessary for the resolution of this case consistent with this opinion.

With regard to Claimant's argument that Job Center transgressed his due process rights, we find no evidence to support this allegation. Specifically, Claimant contends that, by orally denying his claim for benefits on April 26, 1995, the Job Center denied his due process rights.

∎ The two essential requirements of due process in an administrative proceeding are notice and the opportunity to be heard. *Groch v. Unemployment Compensation Board of Review*, 81 Pa.Cmwlth. 26, 472 A.2d 286 (1984). A review of the record in the present case reveals that Claimant received both adequate notice and the opportunity to be heard.

First, the Job Center mailed a "Notice of Determination" dated May 22, 1995 advising him that the Agency could not proceed with processing a Notice of Final Determination until it received "a valid DD–214." The notice was apparently received by Claimant because he filed a timely Petition for Appeal in response to it on June 5, 1995. (R. Items Nos. 3 and 4.)

Second, on June 22, 1995, the Board mailed him a Notice of Hearing scheduled for July 12, 1995, which also advised him of his right to legal or non-legal counsel, the role of the referee, the right to present testimony and evidence, the right to question witnesses upon request, other rights which were also repeated at the hearing and suggestions on how to prepare for the hearing. (R. Item 5.)

Third, Claimant appeared at the hearing on July 12, 1995, and was orally advised of his right to an attorney or other advisor, to present witnesses and documents, and to question other witnesses. Claimant acknowledged that he understood these rights. (R. Item 6, page 1.)

Fourth, the referee's *subsequent written decision* dated July 25, 1995, notified Claimant of his denial of benefits and advised Claimant of his right to appeal to the Board, which Claimant obviously exercised.

Claimant cites *Vann v. Unemployment Compensation Board of Review*, 508 Pa. 139, 494 A.2d 1081 (1985), as support for his argument that Job Center denied him due process.[15] The Supreme Court, in *Vann*, however, held that claimant's due process rights were not violated when the referee failed to instruct Vann, who was unrepre-

14. Unemployment compensation authorities should inquire as to whether Claimant's appellate process has been completed and the nature of the discharge awarded, if such process has been completed and, if so, obtain the nature of the release or discharge awarded and, if such process has not been completed, whether or not appellate leave status constitutes a release from active duty under honorable or other conditions.

15. By virtue of 34 Pa.Code § 101.21a, a claimant appearing at the referee's hearing without counsel is entitled to assistance from the referee in the development of his case and advice as to his basic rights. *Bennett v. Unemployment Compensation Board of Review*, 66 Pa.Cmwlth. 455, 445 A.2d 258 (1982). In the case at bar, the referee provided assistance to the claimant by informing him that, to qualify for benefits, he must first be discharged or released under honorable conditions. (Hearing Transcript at 5.) Claimant responded by acknowledging that he was bound to the Coast Guard, that he was not on active duty, that he was not working or receiving any money, pay or assistance from the Coast Guard and that he has not yet received any indication when he would return to active duty. (*Id.* at 6, 10.)

sented by counsel, that employer had the burden of proof and that the claimant had the right to decline to testify. *Vann* is inapplicable here because Claimant does not assert that the referee refused to assist him, but contends that when he went to the Job Center to inquire about benefits, an employee orally advised him that he had been denied. Claimant asserts that he was denied due process because he only received a written determination after writing to a supervisor and complaining that he had not received a determination in writing.

The net result is, however, that Claimant received cooperation from the Job Center, that he was given correct oral information in advance of its normal written release, that there was a timely response to his complaint, that he was given adequate notice, that he was advised of his rights on several occasions and that he was given a fair hearing. Upon reviewing the record, we find no transgression of Claimant's due process rights.

In accordance with this opinion, we vacate the Board's order and remand the case for further proceedings and findings, utilizing the provisions of federal and state law to obtain and exchange the necessary information to determine whether or not Claimant has been discharged or released under honorable or other conditions which would qualify him for benefits.

### ORDER

NOW, May 3, 1996, the decision of the Unemployment Compensation Board of Review, No. B–340376, dated September 7, 1995, is vacated and this case is remanded for further proceedings and findings, utilizing the provisions of federal and state law to obtain and exchange the necessary information to determine Claimant's eligibility for benefits. Specifically, the compensation authorities are to inquire into the legal effect of Claimant's court martial sentence and his appellate leave status.

Jurisdiction relinquished.