John C. WISE, Petitioner,

v.

### UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 8, 1997.
Decided Sept. 24, 1997.

David J. Flowers, Indiana, for petitioner.

Linda S. Lloyd, Assistant Counsel, and Clifford F. Blaze, Deputy Chief Counsel, Harrisburg, for respondent.

Before SMITH and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

John C. Wise (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board) which affirmed an order of the referee denying him unemployment compensation benefits.

1. Section 402(e) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e). Section 402(e) provides:

> An employe shall be ineligible for compensation for any week—
> (e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is "employment" as defined in this act.

2. Section 402(b) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(b) provides, in pertinent part, as follows:

> An employee shall be ineligible for compensation for any week—
> (b) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature,....

Claimant applied for unemployment compensation benefits with the Indiana Job Center (Job Center). The Job Center, by decision dated January 10, 1997 granted benefits. The Job Center concluded that Claimant was terminated from his employment, and, accordingly determined the case on the basis of Section 402(e) of the Pennsylvania Unemployment Compensation Law (Law).[1] The Job Center determined that because Claimant was fired for reasons which did not constitute willful misconduct, he was entitled to benefits.

On appeal, Vite Trucking (Employer) argued before the referee that contrary to the Job Center's determination, Claimant voluntarily quit his employment, and that because he did so for reasons which were not necessitous or compelling, he was not entitled to benefits pursuant to Section 402(b) of the Law.[2]

The referee, by decision dated January 6, 1997, reversed the Job Center, agreeing with Employer that the matter should be decided under Section 402(b) of the Law, and additionally, concluding that Claimant's voluntary termination was not for reasons of a necessitous and compelling nature. The Board, without opinion, affirmed and adopted the decision and order of the referee by order dated March 13, 1997. It is from this order that Claimant appeals here.

 The only issue before us on appeal is whether, given the facts of the case,[3]

3. The findings of fact can be summarized as follows. Claimant, who worked for Employer as a full-time truck driver, was hauling coal for a customer of Employer approximately two months before his final day of work on December 13, 1996. A spill of the coal resulted on the highway which Claimant offered to clean up; however, before he could get off work to do so, Employer's customer cleaned up the spill. The customer billed Employer for the cost of the cleanup. Employer felt that Claimant should pay for part of the cleanup and a two month argument ensued; Claimant continually refused to pay for the cleanup since he offered to cleanup the spill. The following relevant findings of fact regarding the termination of Claimant's employment are as follows:

> 9. On December 13, 1996, the claimant received his pay check and $113.00 was deducted from his pay.

Claimant was fired from his employment, or whether Claimant voluntarily terminated his employment. We note that our scope of review is limited to determining whether constitutional rights have been violated, an error of law has been committed or whether necessary findings of fact are supported by substantial evidence. *Baertl v. Unemployment Compensation Board of Review*, 156 Pa. Cmwlth. 428, 627 A.2d 1232 (1993). In an unemployment compensation case, the issue concerning whether a termination of services is a voluntary quit or a discharge is a question of law to be determined by this Court based upon the findings of fact in the record.

As indicated previously, the findings of fact reveal that Employer discussed with Claimant his feelings that Claimant should pay for the cost of clean up. It is undisputed that Claimant never agreed to pay for any portion of the cleanup cost and that, nevertheless, Employer deducted half the cost of the cleanup from Claimant's paycheck. Also undisputed, and as found by the referee, when Claimant discussed with Employer the fact that he was not going to pay half of the cleanup cost charged to Employer by the customer, Employer told him that if he did not pay half the cleanup cost, "then he [Employer] would be down to pick up claimant's truck." (Referee's decision, p. 2, FOF 14).

The testimony of Claimant regarding this incident, which the referee adopts in finding of fact 14, is as follows:

R What happened that made you not work for him any longer?

C This is going on for two months for us to pay for clean up. I told him I refused to pay it. First time he asked me I did tell him I'd quit before I'd pay. And that was said right up at his garage when I was working on my truck. So it kept going on,

never heard nothing, never heard nothing. He called me up one day and he said, well, he gave me the dispatcher and he said (INAUDIBLE). I said John, I told you I refused to pay it. I don't feel I should because I didn't refuse to help clean it up. Next thing you know, I got my check around December and he took it out. I was at work and my wife went up and picked it up. At the end of the day she showed it to me and I went up to the shop and told him, I asked him why. That's all I did at first. I asked him why he took it out of my check when I told him I refused to pay it. And he looked at me and he said, John, he said if your job ain't worth $113 I don't know what your problem is. Well, the next thing you know I flew off the handle, he flew off the handle. He told me if I want my money back fine, go get it. *Just get down and fix the truck up. I said, fine, it'll be cleaned. It'll be read out (sic). I said you want me to bring it up, I'll bring it up. He said, no, we'll be down to pick it up. They come down and picked it up.*

(Transcript, pp. 5–6). (Emphasis added).

■ An employee may assume that his employment has been terminated, even though the employer has not specifically used words such as "fired" or "discharged," where the language used by an employer possesses the immediacy and finality of a firing. *Keast v. Unemployment Compensation Board of Review*, 94 Pa.Cmwlth. 346, 503 A.2d 507 (1986); *Torsky v. Unemployment Compensation Board of Review*, 81 Pa.Cmwlth. 642, 474 A.2d 1207 (1984); *Caperila Unemployment Compensation Case*, 200 Pa. Superior Ct. 357, 188 A.2d 759 (1963). In *Torsky*, this Court held that the employer's statement to

10. The $113.00 which was deducted from the claimant's pay represented one-half of the bill for the whole spill which the claimant had two months prior.
11. The owner had decided, because of conflicting statements made by the claimant and the contracted coal company representatives, that he would split the coal cleanup bill with the claimant.
12. The claimant confronted the owner about the $113.00 deduction from his pay and an argument ensued.

13. The owner told the claimant that his job should be worth $113.00.
14. The owner told the claimant that if he wanted a return of his $113.00 then he would be down to pick up claimant's truck.
15. The claimant reported to the office and received the $113.00 and the owner picked up the claimant's truck.
(Referee's decision, pp. 1–2).

the claimant that if he did not meet the production standard required by the employer the following day, he should not bother reporting back to work, contained the requisite immediacy of a firing. In *Caperila*, the Superior Court likewise held that the employer's statement, during a heated exchange between the employer and the claimant, that "I am the boss . . . if you don't like it, there's the door," had the requisite immediacy of a discharge. *Caperila*, 200 Pa. Superior Ct. at 359, 188 A.2d at 760. The *Caperila* court noted that language such as "there's the door," "pick up your pay," "turn in your key," etc., was sufficient to constitute a discharge. *Id.*

We conclude that Employer's statement to Claimant, that "if [the Claimant] wanted his money back fine, go get it . . . [j]ust *get down and fix the truck up* . . . *we'll be down to pick it up*" and the circumstances surrounding this statement, had the requisite finality and immediacy of a discharge. Accordingly, we hold that the Board, in adopting the decision and order of the referee, erred as a matter of law in concluding that Claimant voluntarily quit. The Job Center properly determined the matter under Section 402(e) of the Law, and we now vacate the Board's order and reinstate the Job Center's determination.

### ORDER

AND NOW, this 24th day of September, 1997, the order of the Unemployment Compensation Board of Review dated March 13, 1997 is vacated and the determination of the Indiana Job Center dated January 10, 1997 is reinstated.

SMITH, J., dissents.