# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

# IN AND FOR NEW CASTLE COUNTY

|  |  |  |
|---|---|---|
| KARYN ELLICOTT, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | C.A. No. N14A-05-010 CLS |
| | ) | |
| STERICYLE INC. | ) | |
| and | ) | |
| THE UNEMPLOYMENT | ) | |
| INSURANCE APPEAL BOARD, | ) | |
| | ) | |
| Appellees. | ) | |

Date Submitted:    October 24, 2014
Date Decided:    January 23, 2015

On Appeal from the Decision of the Unemployment Insurance Appeal Board.
**AFFIRMED.**

# <u>ORDER</u>

Karyn Ellicott, Newark, Delaware, 19711.  *Pro Se* Appellant.

Timothy J. Wilson, Esq., The Wilson Firm, LLC, 24 Deerborne Trail, Newark, Delaware 19702. Attorney for Stericylce, Inc.

Paige J. Schmittinger, Esq., Deputy Attorney General, Department of Justice, Wilmington, Delaware, 19801.  Attorney for the Unemployment Insurance Appeal Board.

**Scott, J.**

# INTRODUCTION

Before the Court is Appellant Karyn Ellicott's ("Appellant" or "Claimant") appeal from the decision of the Unemployment Insurance Appeal Board (the "Board") affirming the decision of the Appeals Referee and finding that Appellant was discharged for just cause in connection with her work at Stericycle, Inc. ("Employer"). The Court has reviewed the parties' submissions and the record below. For the following reasons, the Board's decision is **AFFIRMED**.

# FACTUAL AND PROCEDURAL CONTEXT

Claimant was employed by Stericylce, Inc. from December 10, 2012 to December 10, 2013. At the time of her termination, Claimant was employed as a full time Customer Service Experience Expert and earned $9.52 per hour.

## *Claims Deputy's Determination*

On December 31, 2013, the Claims Deputy found that Claimant had stated in a conversation with her Team Lead that, "my supervisor makes her so angry it makes her want to get a machine gun and start spraying the office." The Claimant admitted to having a conversation with her Team Lead, but said it was a personal/private conversation. The Claims Deputy also found that Employer had provided supporting documentation of the incident. Claimant's threat of violence in the workplace constituted misconduct. The Claims Deputy ruled that Claimant

2

was disqualified from receiving benefits pursuant to 19 *Del. C.* § 3314(2), because Claimant had been discharged from her employment for just cause. Claimant timely appealed the Claims Deputy's determination. A hearing was held before an Appeals Referee on January 31, 2014.

*Hearing Before the Appeals Referee*

At the hearing, Jackie McNulty, Claimant's Team Lead at Stericycle and the person who heard the threat, testified before the Referee on Employer's behalf. She testified that on December 5, 2013, she called Claimant into her office to discuss a work error. It was during that conversation that Claimant stated that she hated Ron Watson, a supervisor at Stericycle. The Claimant went on to say that Mr. Watson made her so angry that she, "[wanted] to get a machine gun and start spraying the office." Ms. McNulty testified that she was startled by Claimant's statement, and that Claimant responded that she would not do that, but was trying to prove a point. Claimant then continued to talk about how much she hated Mr. Watson and indicated three other people she hated. After this meeting, Ms. McNulty reported Claimant's behavior to Ms. Derocili. Ms. McNulty documented Claimant's conduct and testified that there was no way that she misheard Claimant's statement.

Brenda Derocili, the Contact Center Manager for Employer, also testified on behalf of Employer regarding the nature of Claimant's employment at Stericycle and the procedure that was followed for terminating Claimant. She also testified about Employer's Code of Business Conduct and Team Member Handbook, which expressly provide that threats and acts of violence in the workplace are prohibited and may lead to immediate termination. Moreover, Employer introduced through Ms. Derocili's testimony Claimant's signed Team Member Handbook Receipt Acknowledgement form, dated June 13, 2013. Ms. Derocili testified that, ultimately, Employer discharged Claimant for misconduct, pursuant to Employer's Code of Business Conduct and Team Member Handbook policies.

Claimant testified that she had other team leads, but specifically requested to work with Ms. McNulty because every other team lead either physically or mentally abused Claimant, and that she had no reason to distrust Ms. McNulty until the point when Ms. McNulty fabricated this allegation of Claimant's threat against Mr. Watson. Claimant testified that during that December 5 meeting, Ms. McNulty warned Claimant to lay low because management was after her. Claimant never said that she hated Mr. Watson, that she doesn't even know Mr. Watson nor does she work directly with him, and she never said that she wanted to get a machine gun and start spraying the office. Claimant testified that she is a Christian and would not say such things. The employer has no recording of her

4

making the statement, and it's their word against hers. Claimant testified that she felt tortured and harassed by management. Claimant also denied having seen the Code of Business Conduct or the Team Member Handbook.

*Appeals Referee's Determination*

By decision dated February 19, 2014, the Appeals Referee affirmed the decision of the Claims Deputy. The Appeals Referee found that Claimant told her Team Lead that she hated the floor supervisor (Mr. Watson) so much that she "[wanted] to get a machine gun and start spraying the office," and that such behavior is egregious and rises to the level of willful or wanton misconduct. The Referee found that Employer produced credible testimony from Claimant's Team Lead regarding the incident, and noted that Claimant's own testimony that she specifically requested to work with Ms. McNulty and had no reason to distrust her added to the credibility of Ms. McNulty's testimony. Based on these findings, the Referee concluded that Claimant was discharged for just cause by Employer and consequently disqualified from receipt of unemployment benefits. On February 28, 2014, Claimant appealed the Referee's decision. A hearing was held before the Board on April 8, 2014.

*Appeals Board's Decision*

By decision dated May 13, 2014, the Board affirmed the Referee's determination. The Board found that Employer had established that a policy against threats of workplace violence existed, and that Claimant was aware of that policy. Supported by case law, the Board found that while "just cause" for termination generally requires more than one incident of misconduct, a single instance of violence or threats of violence may be sufficient to establish just cause.[1] The Board found that Employer offered credible evidence to establish that Claimant violated the Employer's policy by making a statement that was a threat of workplace violence. Moreover, the Board found no error of law in the Referee's decision. Accordingly, the Board ruled that Claimant's misconduct—threat of workplace violence—provided just cause for her discharge, and consequently that Claimant was disqualified from receipt of benefits. This appeal followed.

## PARTIES CONTENTIONS

On appeal, Claimant argues that the burden of proof is on the Employer to show Claimant's misconduct, which requires the Employer prove "beyond a shadow of a doubt, that the employee willfully did something improper."[2] Claimant argues that Employer did not meet this standard because there is no hard

---

[1] *See* R. at 169 (citing *Mack v. RSC Landscaping*, 2011 WL 7078291. *2 (Del. Super. Dec. 22, 2011)).

[2] Appellant's Opening Br. at 2.

evidence that the event – Claimant's threat of workplace violence – occurred. Moreover, Claimant argues that the Referee and the Board improperly considered the testimony of Ms. Derocili and Ms. McNulty because their testimony was hearsay evidence, which "should be given very little to no weight at all."[3] Claimant argues that when an employer fails to provide any evidence other than hearsay, such hearsay evidence is not sufficient to constitute substantial evidence.[4] Furthermore, Claimant makes the blanket assertion that the Assistant Attorney General "was new to the Unemployment Board proceedings and she did not follow proper protocol."[5]

For the first time, Claimant now alleges that the Appeals Referee "was in collusion with the Appellees and their attorney" because Claimant observed the Referee exiting an office in which Employer had conference with its attorney prior to the start of the hearing.[6] Also for the first time, Claimant argues that the Board's decision should be reversed because a review of the Appeals Referee hearing shows that the Referee was improperly combative with Claimant and fell short of the standard of conduct.[7] As further support for this argument, Claimant

---

[3] Appellant's Opening Br. at 2.
[4] *See* Appellant's Reply Br. at 10.
[5] Appellant's Reply Br. at 9.
[6] Appellant's Reply Br. at 9; *see* Appellant's Opening Br. at 4.
[7] *Id.* at 8. Claimant cites *Zimmerman v. Unemployment Comp. Bd. of Review*, 836 A.2d 1074, n.5 (Pa. Cmwlth. 2003) (Court finding that the Referee's conduct fell short of the standard requiring referees to aid *pro se* claimants at the hearing because the Referee chastised the

7

asserts that the Referee failed adhere to her responsibility to assist *pro se* claimants at the hearing so that the facts of the case necessary for decision may be adequately developed.[8]

The Board advised the Court by letter that it would not file an Answering Brief because "[t]he underlying case is on the merits, and the Appellant raises only challenges to the Board's decision on the merits."[9] As such, the Board does not intend to participate further in this appeal.[10]

Appellee Employer filed an answering brief on October 7, 2014. Employer argues that the Board's decision should be affirmed because it was supported by substantial evidence presented to both the Appeals Referee and the Board. Employer also argues that the Board's decision was free from legal error because neither the Referee nor the Board improperly considered hearsay evidence. Employer argues that Claimant's hearsay argument fails because the testimony by

claimant, quarreled with the claimant's description and, *sua sponte,* objected to claimant's attempted testimony).

[8] Appellant's Reply Br. at 8. Claimant cites *Coates v. Unemployment Comp. Bd. of Review*, 676 A.2d 742, n.3 (Pa. Cmwlth. 1996) (Court noting that the referee has a responsibility to assist *pro se* claimants at the hearing so that the material facts of the case may be adequately developed. The Court found that the referee did not adhere to that responsibility because the referee failed to inform the claimant that he could have requested a continuance to secure and present testimony from the employer, because the evidence would have aided in the development of a necessary factual determination); *Jennings v. Unemployment Comp. Bd. of Review*, 675 A.2d 810, n. 15 (Pa. Cmwlth. 1996) (By virtue of 34 Pa.Code § 101.21a, a claimant appearing at the referee's hearing without counsel is entitled to assistance from the referee in the development of his case and advice as to his basic rights) (citations omitted).

[9] Letter dated October 3, 2014 from Paige J. Schmittinger, Esquire, Deputy Attorney General, to the Court.

[10] *Id.*

Ms. Derocili and Ms. McNulty was not hearsay because they testified to admissions by a party opponent under D.R.E. Rule 801(d)(2). Alternatively, there is not prohibition against hearsay evidence when such evidence is submitted to a Delaware administrative tribunal. Thus, the Board's decision should be affirmed.

## STANDARD OF REVIEW[11]

On appeal from the Unemployment Insurance Appeal Board, the Superior Court must determine if the Board's factual findings are supported by substantial evidence in the record and free from legal error.[12] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[13] The Court must review the record to determine if the evidence is legally adequate to support the Board's factual findings.[14] The Court does not "weigh evidence, determine questions of credibility or make its own factual

---

[11] Claimant argues that the burden of proof is on the Employer to show Claimant's misconduct, which requires the Employer prove "beyond a shadow of a doubt, that the employee willfully did something improper." Appellant's Opening Br. at 2. However, this is not the appropriate standard to apply to administrative hearings or on appellate review of those hearings. As discussed in the Appeals Referee and Board decisions, in an administrative hearing, the burden of proof imposed on an employer to prove "just cause" for termination of an employee is a "preponderance of the evidence," which means "the side on which the greater weight of evidence is found." *See* R. at 118, 168-69; *Taylor v. State*, 748 A.2d 914 (Del. 2000). This standard is significantly lower burden than Claimant's asserted "beyond a shadow of doubt" standard. Moreover, as set forth in this section, the standard of review applied by the Superior Court when reviewing decisions by the Board or Appeals Referee is whether there was "substantial evidence" to support the decision below.

[12] *Unemployment Ins. Appeal Bd. v. Duncan*, 621 A.2d 340, 342 (Del. 1993).

[13] *Histed v. E.I. duPont de Nemours & Co.*, 621 A.2d 340, 342 (citing *Olney v. Cooch*, 425 A.2d 610, 614 (1981)).

[14] *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965).

findings."[15] Where, as in this case, the Board adopted the Referee's decision as its own, the Court will also review the Referee's findings and conclusions of law.[16]

## DISCUSSION

In administrative appeals cases, this Court has recognized that it may "exhibit some degree of leniency toward a *pro se* litigant to see his case is fully and fairly heard."[17] However, *pro se* litigants are still expected to adhere to the rules and requirements of this Court.[18] "There is no different set of rules for *pro se* plaintiffs, and the trial court should not sacrifice the orderly and efficient administration of justice to accommodate an unrepresented plaintiff."[19]

### I. The Board's Decision is Supported by Substantial Evidence.

The issue before the Court is whether the Board erred when it found that Claimant was discharged for just cause in connection with her work. An individual "discharged from the individual's work for just cause in connection with the individual's work" is not entitled to receive unemployment benefits.[20] The employer bears the burden of showing by a preponderance of the evidence that the

---

[15] *Id.* at 67.
[16] *See Boughton v. Div. of Unemployment Ins. of Dep't of Labor,* 300 A.2d 25, 26 (Del. Super. 1972).
[17] *Jackson v. Unemployment Ins. Appeal Bd.*, 1986 WL 11546, at *2 (Del. Super. Sept. 24, 1986).
[18] *See Von Fegyverneky v. CFT Ambulance Serv.*, 2012 WL 2700464, at *3, n.17 (Del. Super. June 28, 2012) (citing *Draper v. Medical Center of Delaware,* 767 A.2d 796, 799 (Del.2001).
[19] *Draper v. Medical Center of Delaware,* 767 A.2d 796, 799 (Del.2001).
[20] 19 *Del. C.* § 3314(2).

individual was discharged for just cause.[21] "'Just cause' is defined as a willful or wanton act or pattern of conduct in violation of the employer's interest, the employee's duties, or the employee's expected standard of conduct."[22] Where an employer does not condone the employee's willful or wanton misconduct, "an unequivocal warning to the employee is not mandated."[23]

To determine whether an employee's violation of a policy constitutes just cause, the Court considers (1) "whether a policy existed, and if so, what conduct was prohibited under the policy" and (2) "whether the employee was apprised of the policy and if so, how was he made aware."[24] An employee handbook outlining conduct that constitutes grounds for termination is sufficient to establish company policy.[25] Evidence that an employee received the employee handbook is sufficient to establish that the employee was made aware of company policy.[26]

The Board's decision that Claimant was discharged for just cause in connection with her work was supported by substantial evidence. Among the evidence before the Board in this case were Employer's Code of Business Conduct

---

[21] *Edmonds v. Kelly Servs.,* 2012 WL 4033377, at *2, 53 A.3d 301 (Del. 2012)(TABLE).
[22] *Id.* (quoting *Avon Products, Inc. v.Wilson,* 513 A.2d 1315, 1317 (Del. 1986)).
[23] *Duhr v. State, Dep't of Labor, Unemployment Ins. Appeal Bd.*, 1988 WL 102980 (Del. Super. Sept. 28, 1988).
[24] *Tolson v. Central De Community Drug & Alcohol,* 2012 WL 3027369, at *3 (Del. Super. Jul. 24, 2012).
[25] Moeller v. Wilmington Sav. Fund Soc., 723 A.2d 1177, 1179 (Del. 1999).
[26] Id.

and Team Member Handbook.[27] These documents establish Employer's expectations of employee conduct and behavior that violates these policies. Specifically, these policies put its employees on notice of possible "corrective action up to and including termination" for failing to conduct oneself in an appropriate manner and that "[m]anagement reserves the right to immediately terminate acts of blatant misconduct."[28] [As stated above,] an employee's knowledge about a particular policy can be established through a written policy. The Board chose to give weight to this evidence and as stated above, the Court will not disturb the credibility determinations made by the Board. Further the Court does not find the Board's consideration of these documents to constitute legal error.[29] Moreover, the Board also had before it the Team Member Handbook Acknowledgement that was signed by Claimant on June 13, 2013.[30]

The Board adopted the Referee's finding that, on December 5, 2013, Claimant stated to her Team Lead in a meeting, that her supervisor, Mr. Watson,

_____

[27] The Court notes that Claimant challenges this evidence as incomplete, and appeared to object to its admission at the Referee hearing, but did not state a legal basis for her objection. *See* Appellant's Reply Br. at 4. However, there is no factual basis for her challenge in the record because Ms. Derocili testified before the Referee that the pages from these documents were merely the relevant excerpts, and that the entire documents were available. R. at 67-68.

[28] R. at 109; *see* R. at 107-13.

[29] The Court notes that "[a]dministrative boards are not constrained by the rigid evidentiary rules which govern jury trials, but should hear all evidence which could conceivably throw light on the controversy. Therefore, an informal tribunal, such as the UIAB, is not bound by the Delaware Rules of Evidence, but it may follow those rules in its discretion so long as a party is not unduly prejudiced." *Baker v. Hosp. Billing & Collection Serv., Ltd.*, 2003 WL 21538020 at *3 (Del. Super. Apr. 30, 2003).

[30] R. at 114.

made her so angry that she "[wanted] to get a machine gun and start spraying the office." This finding was supported by Ms. McNulty's testimony, Claimant's Team Lead who overheard Claimant's statement and who described the incident to the Referee and the Board. Ms. Derocili, a manager at Stericycle, also testified about the incident and the procedure that was followed in terminating Claimant.

The Court does not find the Referee or the Board's consideration of either Ms. McNulty or Ms. Derocili's testimony to constitute an error of law. The testimony offered by Employer was not hearsay under Rule 801(d)(2).[31] Ms. McNulty testified to statements made by Claimant – a party opponent – to Ms. McNulty. As such, Ms. McNulty's testimony was not hearsay. Even if portions of either witness's testimony was hearsay, the Board did not err as a matter of law. Administrative boards should hear all evidence which could conceivably throw light on the controversy.[32] "[A]n informal tribunal, such as the UIAB, is not bound by the Delaware Rules of Evidence, but it may follow those rules in its discretion so long as a party is not unduly prejudiced."[33] Further, "[h]earsay evidence is generally admissible at administrative hearings for certain purposes."[34] Therefore,

---

[31] An admission by a party opponent is defined in relevant part, as: a statement "offered against a party and is (A) his own statement, in either his individual or representative capacity." D.R.E. 801(d)(2).

[32] *See Baker,* 2003 WL 21538020 at *3.

[33] *Id.*

[34] *Id.*

13

the Board's consideration of any potential hearsay does not constitute an error of law.

Based on the evidence presented to the Board and at the Appeals Referee hearing, the Board concluded that Claimant was aware of Employer's policy against threats of workplace violence, and that Claimant made of threat of workplace violence to her Team Lead, which constituted a terminable offense.

## II. Claimant's Allegations of Misconduct by the Appeals Referee are Waived Because Claimant Did Not Raise Them Before the Board.

Claims which are not presented before the Board may not be first raised on Superior Court appeal, unless the interests of justice so require.[35] The interests of justice do not require this Court to consider Claimant's allegations against the Referee because even assuming *arguendo*, Claimant's allegations against the Referee are true, Claimant had to the opportunity to present her additional evidence at the Board hearing, which was free of misconduct and procedural error.[36] Moreover, there is no evidence in the record to suggest that the Referee engaged in

---

[35] *Von Fegyverneky*, 2012 WL 2700464, at *3.

[36] Claimant does not argue that the Board was in collusion with or bias in any way toward Appellees. Further, there is nothing in the record to suggest that proper procedure was not following during the Board hearing. The basis of Claimant's allegation that the Referee was in collusion with Employer is because Claimant observed the Referee exiting an office in which Employer had conference with its attorney prior to the hearing. However, Claimant questioned the Referee about this observation on the record. On the record, the Referee explained that the she had merely gone into the office to speak with another referee, that Employer was permitted by that other referee to use the office for a private Employer-attorney pre-hearing conference, and that the Referee did not communicate with either party. Accordingly, there is no evidence of collusion or other misconduct by the Referee.

misconduct of any sort or failed to faithfully execute her responsibilities.  To the contrary, throughout the hearing the Referee explained the hearing procedures to Claimant, asked Claimant if she understood what had been explained, and answered Claimants questions.[37]  Most notably, Claimant cannot invoke the interests of justice when the substance of her appeal is meritless.  In this case, substantial evidence supports the Board's finding that Claimant was terminated for just cause.

## CONCLUSION

The Unemployment Insurance Appeal Board did not abuse its discretion by disqualifying Employee from unemployment benefits because there is substantial evidence to support the conclusion that Claimant was terminated for just cause. The Unemployment Insurance Appeal Board also did not err as a matter of law. Accordingly, the decision of the Unemployment Insurance Appeal Board is **AFFIRMED.**

**IT IS SO ORDERED.**

/s/Calvin L. Scott
**Judge Calvin L. Scott, Jr.**

---

[37] *See* R. at 47-49, 51-52, 91-92.

15