IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Paul Eible,                                    :
               Petitioner           :
                                       :
                                       : No. 1194 C.D. 2015
             v.                             :
                                         : Submitted: October 23, 2015
Unemployment Compensation                      :
Board of Review,                               :
               Respondent           :


BEFORE:    HONORABLE DAN PELLEGRINI, President Judge[1]
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE JAMES GARDNER COLINS, Senior Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                           FILED: January 29, 2016


        Paul M. Eible (Claimant) petitions, *pro se*, for review of the June 16, 2015 order of the Unemployment Compensation Board of Review (Board) which affirmed a referee's decision that Claimant was ineligible for benefits under section 402(b) of the Unemployment Compensation Law (Law).[2] For the following reasons, we affirm.

---

[1] This case was assigned to the opinion writer on or before December 31, 2015, when President Judge Pellegrini assumed the status of senior judge.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b). Section 402(b) of the Law provides that a claimant shall be ineligible for compensation for any week in which the claimant's unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature.

**Facts and Procedural History**

Claimant was employed by Carbon Lehigh Intermediate Unit #21 (Employer) from January 24, 2014, until his resignation on March 13, 2015. The local service center determined that Claimant was ineligible for benefits because he voluntarily terminated his employment without demonstrating the requisite necessitous and compelling reason. Claimant appealed that decision to a referee who held a hearing on April 23, 2015.

Claimant testified that he worked for Employer as behavioral support for students with advanced autism. Claimant stated that he met with Employer's Director of Human Resources, Michele Borland (Borland), on March 13, 2015, during which Borland advised him that Employer was investigating allegations that he had harmed a student. Claimant also stated that a children and youth services agency (Childline) was conducting a separate investigation concerning the allegations levied against him. Claimant testified that Borland advised him not to return to work until the Childline investigation had been resolved; however, Claimant testified that he was not given any time frame for when that investigation might be completed. Claimant further testified that, after the meeting, Borland advised him that it would be in his best interest to resign because, if he left, Employer would cease its investigation immediately. (Notes of Testimony (N.T.) at 5, 7-8.)

Claimant resigned on March 13, 2015, and stated that he resigned because he was unclear when he would be allowed to return to work. Claimant acknowledged that he was not actually told that he was suspended, but explained that his employment status was uncertain because of the pending Childline investigation. Claimant testified that Employer's investigation was not resolved at the time of his resignation and he was not told that he was going to be terminated. Claimant added

2

that the alleged incident occurred on February 12, 2015, and that he was not afforded an opportunity to present a defense to the incident. (N.T. at 1, 5, 7-11.)

Borland testified that Claimant was not suspended. Instead, Borland stated that, when Employer learned of the Childline investigation, Employer contacted Claimant on March 8, 2015, and notified him that his services would not be needed that week. Borland further testified that she is not responsible for making employment determinations and that she did not advise Claimant that he was going to be terminated. Borland stated that, if Claimant had not resigned, she would have completed her investigation, made a recommendation to Employer's legal counsel, and Employer's board of directors would have made a determination regarding Claimant's employment status. Borland also testified that her investigation had not concluded at the time of Claimant's resignation and, consequently, she did not make a recommendation to the board of directors. Borland noted that, if she had made a recommendation to the board of directors, Claimant would have an opportunity for a hearing before the board of directors, and she stated that this information is available in Employer's contract. (N.T. at 11-13.)

Borland further testified that, during the March 13, 2015 meeting, she did not give Claimant any recommendations for his career. She stated that Claimant asked her what would happen if he resigned and she advised him that Employer's investigation would be terminated and that Employer's records would reflect that Claimant resigned. Borland stated that Claimant did not ask her about any other employment options besides resignation. Borland testified that Claimant was a union member and could have requested union representation at the meeting; however, Claimant did not ask for union representation and a union representative was not present at the March 13, 2015 meeting. Borland added that any time Employer

3

schedules an investigatory meeting that could result in discipline, the meeting request states that the individual has the right to union representation. Borland confirmed that Employer terminated its investigation into the alleged incident following Claimant's resignation and that she was unaware of the results of Childline's investigation. (N.T. at 11-14, 16.)

Following the hearing, the referee made the following findings of fact:

3. On March 8, 2015, a report was made to Childline, a hotline operated by the Department of Human Services to receive reports of suspected child abuse, alleging Claimant kicked a child.

4. On March 13, 2015, Employer conducted an investigatory meeting with Claimant regarding the alleged abuse.

5. Employer explained it was conducting an investigation separate from the investigation conducted by Childline.

6. Claimant asked Employer what would happen if he resigned.

7. Employer advised Claimant it would cease its internal investigation and Claimant's personnel records would reflect his employment ended with resignation.

8. Employer did not advise Claimant he would be discharged if he did not resign.

. . .

10. Neither Childline nor Employer had concluded their respective investigations at the time of Claimant's resignation.

11. Claimant resigned effective March 13, 2015 rather than face the possibility of discharge.

4

(Referee's Findings of Fact Nos. 3-8, 10-11.)

Pursuant to the findings, the referee concluded that Claimant was ineligible for compensation benefits because he voluntarily terminated his employment without a necessitous and compelling reason. Claimant appealed to the Board, which affirmed the referee's decision. The Board found Borland's testimony that she did not make a recommendation to Claimant regarding his career choice credible. The Board also found that Borland had not completed her investigation when Claimant resigned and had no authority to discharge him because that authority was vested in Employer's board of directors. The Board adopted the referee's findings of fact and conclusions of law and determined that Claimant's separation from employment was voluntary and without necessitous and compelling reason, rendering him ineligible for benefits. Claimant submitted a request for reconsideration of the Board's decision, which was denied.

On appeal to this Court,[3] Claimant challenges the Board's finding that Borland did not make a recommendation to Claimant regarding his career choice. Claimant also asserts that the Board erred when it concluded that his resignation was voluntary because Borland recommended that he retire and did not advise Claimant that he was entitled to union representation or that he could be heard before Employer's board of directors. Claimant asserts that, because this information was unavailable to him, resignation was his only choice.

---

[3] Our scope of review in an unemployment compensation appeal is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. 2 Pa.C.S. §704; *Leace v. Unemployment Compensation Board of Review*, 92 A.3d 1272, 1274 n.2 (Pa. Cmwlth. 2014).

## Discussion

Initially, we note that the Board is the ultimate fact-finder and is authorized to resolve conflicts in evidence and determine the credibility of witnesses. *Unemployment Compensation Board of Review v. Wright*, 347 A.2d 328, 329 (Pa. Cmwlth. 1975). The Board's findings of fact are conclusive on appeal if the record, taken as a whole, contains substantial evidence to support those findings. *Henderson v. Unemployment Compensation Board of Review*, 77 A.3d 699, 718 (Pa. Cmwlth. 2013). Substantial evidence is relevant evidence upon which a reasonable mind could base a conclusion. *Fritzo v. Unemployment Compensation Board of Review*, 429 A.2d 1215, 1218 (Pa. Cmwlth. 1981). In determining whether substantial evidence exists, we must examine the testimony in the light most favorable to the prevailing party below, giving that party the benefit of any inference which can be drawn logically and reasonably from the evidence. *Johnson v. Unemployment Compensation Board of Review*, 505 A.2d 738, 740 (Pa. Cmwlth. 1986).

A claimant has the burden of proving entitlement to unemployment compensation benefits. *Jennings v. Unemployment Compensation Board of Review*, 675 A.2d 810, 815 (Pa. Cmwlth. 1996). In a voluntary quit case, this Court must first decide whether the facts surrounding the employee's separation from employment constitute a voluntary resignation or a discharge. *Charles v. Unemployment Compensation Board of Review*, 552 A.2d 727, 729 (Pa. Cmwlth. 1989). Whether a termination constitutes a discharge or a voluntary quit is a question of law to be determined by examining the Board's findings of fact. *Wise v. Unemployment Compensation Board of Review*, 700 A.2d 1071, 1073 (Pa. Cmwlth. 1997).

Generally, where an employee resigns to avoid an *imminent* discharge, the situation is considered a discharge. *Fishel v. Unemployment Compensation*

6

*Board of Review*, 674 A.2d 770, 773 n.2 (Pa. Cmwlth. 1996). However, where an employee resigns, leaves, or quits employment without any action by the employer, that action constitutes a voluntary quit for purposes of compensation benefits. *Monaco v. Unemployment Compensation Board of Review*, 565 A.2d 127, 129 (Pa. 1989). An employee who quits work to avoid the *possibility* of being fired is not entitled to compensation. *Fishel*, 674 A.2d at 772-73.

Claimant asserts that the Board's finding that Borland did not make any career recommendations to Claimant during the meeting was erroneous because Borland recommended that Claimant should resign.

At the referee's hearing, Borland testified that she did not give Claimant any career recommendations. The Board found her testimony credible, and it rejected Claimant's contrary version of their conversation. The Board is the ultimate arbiter of witness credibility and is authorized to resolve any conflicts in evidence. *Wright*, 347 A.2d at 329. Borland's credible testimony constitutes substantial evidence sufficient to support the Board's finding. Accordingly, the Board's finding that Borland did not make any career recommendation to Claimant is conclusive on appeal and cannot be disturbed.

Next, Claimant argues that his resignation was not voluntary because Borland recommended that he resign and did not advise him that he was entitled to union representation or that he could be heard before Employer's board of directors. Claimant asserts that resignation was his only choice.

This Court's decision in *Fishel*, is instructive. The claimant in *Fishel* was a substitute teacher who received an unsatisfactory performance evaluation. A plan with performance objectives was created to improve the claimant's performance, but she received a second unsatisfactory evaluation. At a subsequent meeting with

7

school administrators, an administrative assistant advised the claimant that she could resign and that if she did not resign he would recommend her termination to the school board.

The claimant resigned, and a referee awarded her unemployment compensation benefits, concluding that she resigned under real and substantial pressure. The Board reversed, however, finding that only the school board had the authority to terminate an employee and would hold a formal hearing before doing so. Accordingly, the Board concluded that the claimant resigned voluntarily without necessitous and compelling cause to avoid the possibility of termination.

On appeal to this Court, the claimant in *Fishel* argued that she was forced to resign when the administrative assistant advised her to resign or be terminated by the school board. The claimant alleged that her resignation did not constitute a voluntarily termination because she had no meaningful choice. This Court rejected that argument, stating that only a resignation to avoid *imminent* discharge will be treated as a discharge, and we noted that the outcome of the administrative assistant's recommendation to the school board was far from certain. We affirmed the Board's decision, stating that it is well settled that "an employee who quits work to avoid the possibility of being fired is not entitled to compensation." *Id.* at 772-73.

In this case, the Board found that Borland had not completed her investigation at the time of Claimant's resignation and that Borland did not have the authority to discharge Claimant; that authority was vested in Employer's board of directors. The Board also found that Claimant would have had an opportunity to defend himself at a hearing before Employer's board of directors before he could be discharged.

As in *Fishel*, Claimant's future employment status was not certain. Employer's investigation had not been completed at the time Claimant submitted his resignation, and it is not certain that the results of Borland's investigation would have been unfavorable to Claimant. Additionally, Borland's recommendation would not be determinative because, like the situation in *Fishel*, she did not have the authority to discharge Claimant. As in *Fishel*, Claimant would have had an opportunity to dispute the allegations against him at a hearing before termination occurred. Thus, the Board properly determined that Claimant's resignation does not constitute a resignation to avoid *imminent* discharge. Instead, Claimant resigned to avoid the possibility of being fired and, therefore, he is not entitled to compensation benefits.

Accordingly, we affirm.

_____
PATRICIA A. McCULLOUGH, Judge

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Paul Eible,                               :
        Petitioner               :
                                  :   No.  1194 C.D. 2015
        v.                       :
                                  :
Unemployment Compensation                 :
Board of Review,                          :
        Respondent               :

## *ORDER*

AND NOW, this 29th day of January, 2016, the June 16, 2015 order of the Unemployment Compensation Board of Review is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge