# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Peter Navarro, : 
                          Petitioner : 
                                                   : 
           v. : No. 633 C.D. 2015
                                                   : Submitted: September 11, 2015
Unemployment Compensation : 
Board of Review, : 
                          Respondent : 

BEFORE:   HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
                    HONORABLE ROBERT SIMPSON, Judge
                    HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                         **FILED: October 23, 2015**

In this appeal, Peter Navarro (Claimant), representing himself, asks whether the Unemployment Compensation Board of Review (Board) erred in determining he was ineligible for unemployment compensation (UC) benefits under Section 402(b) of the Unemployment Compensation Law[1] (Law) (relating to voluntary termination) and assessing a fault overpayment against him. Claimant contends the Board's decision is erroneous and its findings are not supported by substantial evidence. In particular, he claims: he did not voluntarily quit but was constructively terminated from employment; he made reasonable efforts to preserve his employment despite a unilateral change to the terms of his employment; and, he did not misrepresent his separation to unemployment authorities warranting a fault overpayment. Upon review, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §802(b).

## I. Background

Claimant worked for Volume Graphics, Inc. (Employer) as a full-time technical solutions expert for three days in August 2014. After his separation from employment, Claimant applied for UC benefits. The local service center issued two determinations: one denying benefits under Section 402(b) of the Law, the other establishing a fault overpayment of benefits. Certified Record (C.R.), Item No. 6 (Notices of Determinations). Claimant appealed, and a referee held a hearing.

At the hearing, the referee heard testimony from Claimant and Roger Wende, Employer's North American Sales Manager (Sales Manager).[2] Based on the evidence presented, the referee affirmed the service center's decisions. Claimant appealed to the Board. The Board made the following findings.

Claimant worked for Employer for three days beginning on August 11, 2014, and ending on August 13, 2014, at a final rate of pay of $68,000 per year. During the interview process, Employer informed Claimant that he was expected to travel up to 50 percent of the time for the first year, and he was required to travel to customer sites. On Claimant's first day of employment, Sales Manager provided him with his travel schedule. Claimant did not express concern to Sales Manager about the travel schedule. Bd. Op., 2/20/15, Findings of Fact (F.F.) Nos. 1-4.

---

[2] Neither Claimant nor Employer was represented by counsel at the hearing.

On the second day, Employer's office manager advised Sales Manager that Claimant was concerned about the amount of travel required. Sales Manager and Claimant discussed the travel schedule, and Sales Manager advised Claimant he would try to find out what would work well for him. Claimant left work that day after working approximately an hour and a half. Claimant did not notify Sales Manager that he was leaving early. F.F. Nos. 5-8.

On Claimant's third and final day, Sales Manager told Claimant he detected red flags and the job would require traveling. After Sales Manager asked Claimant "if he was a team player and if they should continue to work together or 'part ways,'" Claimant began to pack up his things and said, "well, looks like a decision has been made." F.F. No. 11. Claimant left Employer's facility. F.F. Nos. 9-12.

The Board further found Claimant voluntarily quit his employment for unknown reasons. F.F. No. 13. Claimant filed for, and received, UC benefits for claim weeks ending September 13, 2014, through September 27, 2014, in the amount of $526 per week, which totaled $1,578. F.F. No. 14. Claimant informed the service center he was separated from employment based on lack of work. F.F. No. 15. Claimant deliberately deceived UC authorities by reporting lack of work and by failing to report that he voluntarily quit. F.F. No. 16.

Ultimately, the Board resolved the conflicts in testimony, in relevant part, in favor of Employer, specifically finding Sales Manager's testimony credible. Bd. Op., at 23. The Board determined Claimant was ineligible for

3

benefits having voluntarily quit his employment without a necessitous and compelling reason. Thus, it affirmed the referee's decision and denied benefits. In addition, the Board assessed a fault overpayment of $1,578, subject to recoupment pursuant to Section 804(a) of the Law, 43 P.S. §874. Claimant's appeal to this Court followed.

## II. Issues

On appeal,[3] Claimant argues the Board's determination of voluntary termination of employment without cause is erroneous and is not supported by substantial evidence. According to Claimant, Employer was aware he was seeking a position with less travel. He accepted the position based on Employer's representation that he could expect to travel 50 percent or less of the time. However, upon receiving the travel schedule on his first day, it was substantially more than what they initially agreed such that Employer altered the terms of the position. Claimant immediately expressed his concern.

According to Claimant, Employer suggested they part ways and escorted him to the door. Claimant argues Employer's actions had the immediacy and finality of a termination. Alternatively, Claimant contends he was compelled to leave because Employer unilaterally and substantially changed the terms of employment. Either way, the evidence does not support a finding that Claimant voluntarily quit without a necessitous and compelling cause. Finally, Claimant

---

[3] Our review is limited to determining whether necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated. Johns v. Unemployment Comp. Bd. of Review, 87 A.3d 1006 (Pa. Cmwlth.), appeal denied, 97 A.3d 746 (Pa. 2014).

4

contends he did not deceive UC authorities by truthfully advising them he was unemployed through no fault of his own.

### III. Discussion
### A. Constructive Discharge or Voluntary Quit

First, Claimant contends the Board's findings regarding his separation are not supported by substantial evidence. Claimant asserts the Board improperly relied on hearsay evidence, specifically, a letter from the office manager and Sales Manager's statements regarding what Claimant said in reaching its findings. Claimant maintains the Board should have relied on Claimant's version of the facts, not Sales Manager's. According to Claimant, he did not voluntarily quit his employment. Rather, Employer constructively discharged him. More particularly, Employer asked him to leave and escorted him to the door, which had the immediacy and finality of a firing.

Under Section 402(b) of the Law, an employee is ineligible for UC benefits for any week in which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature. 43 P.S. §802(b); Genetin v. Unemployment Comp. Bd. of Review, 451 A.2d 1353 (Pa. 1982). In a voluntary quit case, it is the claimant's burden to prove that his separation from employment is involuntary. Bell v. Unemployment Comp. Bd. of Review, 921 A.2d 23 (Pa. Cmwlth. 2007). In order for an employer's actions to constitute a discharge, the claimant must show that the employer's actions had the immediacy and finality of a "firing." Id. at 26. However, the employer need not specifically use terms such as "fired" or "discharged." Id. Whether a claimant's separation

5

from employment is voluntary or a discharge is a question of law for this Court to determine from the totality of the record. Id.

Further, the Board is the ultimate fact-finder in UC matters and is empowered to resolve all conflicts in the evidence, witness credibility, and weight accorded to the evidence. Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review, 949 A.2d 338 (Pa. Cmwlth. 2008). It is irrelevant whether the record contains evidence to support findings other than those made by the fact-finder; the critical inquiry is whether there is evidence to support the findings actually made. Id. Where substantial evidence supports the Board's findings, they are conclusive on appeal. Id. In addition, we must examine the testimony in the light most favorable to the party in whose favor the fact-finder ruled, giving that party the benefit of all logical and reasonable inferences from the testimony. Id.

While hearsay evidence, admitted without objection, may support a finding of fact in a UC case, it may only do so if it is corroborated by other competent evidence of record. Myers v. Unemployment Comp. Bd. of Review, 625 A.2d 622 (Pa. 1993); Walker v. Unemployment Comp. Bd. of Review, 367 A.2d 366 (Pa. Cmwlth. 1976). "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pa. R.E. 801(c). An out-of-court statement offered to explain course of conduct, however, is not hearsay. Architectural Testing, Inc. v. Unemployment Comp. Bd. of Review, 940 A.2d 1277 (Pa. Cmwlth. 2008) (providing out-of-court statements regarding a claimant's subpar job performance and suspected alcohol abuse did not constitute hearsay because

6

they were not offered for the truth of the matter asserted, but were offered to show employer's reasonable suspicion to request a drug test). In addition, the admission of a party opponent is admissible as an exception to the hearsay rule. Pa. R.E. 803(25); see Sargent v. Unemployment Comp. Bd. of Review, 630 A.2d 534 (Pa. Cmwlth. 1993) (a claimant's statements in initial interview form are admissible because he is the one making the admissions and, therefore, the evidence constitutes a party admission).

Here, the Board's findings regarding Claimant's separation from employment are supported by substantial, competent evidence in the record, in particular, Sales Manager's testimony. Sales Manager testified he detected "red flags," and he attempted to discuss his concerns with Claimant on his third and last day of work. F.F. No. 10; C.R., Item No. 15, Referee's Hr'g, Notes of Testimony (N.T.), 11/13/14, at 19. Sales Manager told Claimant he needed "a team player," and that the job would require traveling. F.F. No. 11; N.T. at 19. Sales Manager asked whether they should continue to work together or whether they should "part ways." F.F. No. 11; N.T. at 20, 23. Claimant never answered the question. N.T. at 19, 20. Instead, Claimant packed his backpack, said "well, looks like a decision has been made," and walked out. F.F. No. 11; N.T. at 19, 20.

According to Sales Manager, he never indicated Claimant was fired, but he needed reassurance from him that he could do the job, which entailed traveling. N.T. at 19. Sales Manager testified he never said he was going "to get

7

rid of [Claimant]," and he did not write a termination letter.[4]  Id.  Rather, he gave Claimant the option of staying, but Claimant simply "got up and left."  Id. at 20. Sales Manager escorted Claimant out of the office and wished him well.  Id.

Although Claimant testified regarding his version of events, the Board credited Sales Manager's version.  To the extent Claimant contends the Board erred in finding Employer's evidence credible over his, such credibility determinations are within the sole province of the Board and will not be disturbed on appeal.  See Ductmate.

Further, contrary to Claimant's assertions, the Board did not improperly rely on hearsay evidence.  Claimant takes issue with a letter referenced by Sales Manager in his testimony, over Claimant's objections.[5]  N.T. at 17-18.  In the letter, Employer's office manager reported Claimant's concerns about the position and the amount of travel involved.  C.R., Ex. No. E3; N.T. at 6, 17-18. However, the letter was not hearsay because it was not offered to prove the truth of

---

[4] Although Sales Manager occasionally referred to Claimant's separation as "the termination," when read within the context of his testimony, it is clear his reference to "the termination" simply refers to the cessation of employment, not a discharge or firing.  N.T. at 17.

[5] Claimant also objected to the admission of this exhibit on the basis that he did not receive a copy of it prior to the hearing.  N.T. at 6.  However, the referee overruled this objection upon determining all exhibits were mailed to Claimant's address on file.  Id.; compare C.R., Ex. Nos. 2, 4, 9, 10-11, 14, 17 (listing 1225 S. Church St., Apt. 325, Charlotte, NC 28203) and C.R., Ex. Nos. E1-E4 (same address).  Although Claimant disputed receiving any exhibits, he confirmed he received a packet of documents from the Department of Labor and Industry, which included the notices of determinations and Exhibit No. 2.  See id. at 4-5, 11.  Moreover, the entire case file was available for review prior to the start of the hearing.  Id. at 6.  Therefore, Claimant's challenge in this regard is unavailing and is not supported by the record.

8

the matter asserted therein. Rather, it was offered to explain Sales Manager's course of conduct in meeting with Claimant to discuss whether the position was the right fit for him. See N.T. at 17-18. Moreover, Claimant himself testified he spoke with the office manager regarding his concerns over the extent of travel involved. Id. at 9-10, 13-14, 15.

Claimant also challenges the Board's reliance on Sales Manager's testimony regarding what Claimant said to him in their meetings. Id. at 18-19. However, such testimony qualifies as a hearsay exception as an admission by a party opponent. See Pa. R.E. 803(25); Sargent.

Upon review, we conclude the Board's findings are supported by substantial, competent evidence. In turn, the Board's findings support the conclusion that Claimant voluntarily quit his employment. Contrary to Claimant's assertions, Sales Manager's actions did not carry the immediacy and finality of a discharge. See Bell. Rather, Sales Manager gave Claimant a choice to stay or part ways. N.T. at 19-20, 23. Claimant chose the latter.[6] Thus, we are satisfied the Board did not err in concluding Claimant voluntarily quit.

## B. Necessitous and Compelling Cause

Alternatively, Claimant contends he established necessitous and compelling cause to leave employment because Employer unilaterally altered the terms of employment. According to Claimant he accepted the position because it would entail no more than 50 percent of travel time. However, on his first day, he

---

[6] In fact, Claimant admits he "quit" the position in this appeal. Pet'r's Reply Br. at 11.

received a travel schedule that included substantially more travel than 50 percent. Claimant contends he discussed his concerns with Employer in an effort to preserve his employment, but to no avail.

It is the claimant's burden to show necessitous and compelling cause for terminating employment. Middletown Twp. v. Unemployment Comp. Bd. of Review, 40 A.3d 217 (Pa. Cmwlth. 2012). To prove necessitous and compelling cause to terminate employment, a claimant must show: 1) circumstances existed which produced real and substantial pressure to terminate employment; 2) such circumstances would compel a reasonable person to act in the same manner; 3) claimant acted with ordinary common sense; and, 4) claimant made a reasonable effort to preserve his employment. Brunswick Hotel & Conference Ctr., LLC v. Unemployment Comp. Bd. of Review, 906 A.2d 657 (Pa. Cmwlth. 2006). What constitutes a necessitous and compelling cause to voluntarily terminate employment is a question of law subject to this Court's review. Id.

An employer's imposition of a substantial, unilateral change in the terms of employment may constitute a necessitous and compelling reason for an employee to terminate employment. Id.; McCarthy v. Unemployment Comp. Bd. of Review, 829 A.2d 1266 (Pa. Cmwlth. 2003); Fitzgerald v. Unemployment Comp. Bd. of Review, 714 A.2d 1126 (Pa. Cmwlth. 1998). However, "mere discontent with wages, hours and working conditions is not adequate to cause a necessitous and compelling reason for an employee to quit." Brunswick, 906 A.2d at 663.

10

Here, Claimant's assertion that Employer altered the terms of employment is not supported by the record. Both Claimant and Sales Manager testified they agreed the job would entail 50 percent or less travel at hiring. N.T. at 9, 12, 15, 21. According to Claimant, the travel schedule he received on his first day entailed far more extensive travel. Id. at 9-10. However, Sales Manager credibly testified Claimant was not required to travel more than 50 percent of the time. Id. at 21. Sales Manager explained that, although Claimant's initial travel schedule was busy for purposes of training, within the context of the calendar year and the first 17 weeks of employment, travel did not exceed 50 percent. Id. at 17, 18, 21. The Board credited Sales Manager's testimony in this regard. Thus, contrary to Claimant's assertions, Employer did not change the terms of employment by requiring more travel.

Moreover, Claimant did not make a reasonable effort to preserve his employment. When Sales Manager asked whether Claimant could be a team player or whether they should part ways, Claimant left. Consequently, Claimant did not show a compelling and necessitous reason to quit.

## C. Fault Overpayment

Lastly, Claimant contends he did not deceive UC authorities by indicating lack of work as the reason for his separation. He claims the Board's finding that he reported lack of work is not supported by the record.

Section 804(a) of the Law provides "[a]ny person who by reason of his fault has received any sum as compensation under this act to which he was not

11

entitled, shall be liable to repay ... a sum equal to the amount so received by him and interest ...." 43 P.S. §874. "The word 'fault' within the meaning of Section 804(a) of the Law connotes an act to which blame, censure, impropriety, shortcoming or culpability attaches." Castello v. Unemployment Comp. Bd. of Review, 86 A.3d 294, 298 (Pa. Cmwlth. 2013) (quoting Amspacher v. Unemployment Comp. Bd. of Review, 479 A.2d 688, 691 (Pa. Cmwlth. 1984)). "Conduct that is designed to improperly and intentionally mislead the [UC] authorities is sufficient to establish a fault overpayment." Id. For example, an intentional misstatement on an application for benefits can support a finding of fault under Section 804(a). Id.

Here, the Board found Claimant deliberately deceived UC authorities by stating he was separated due to "lack of work," and he did not advise them that he voluntarily quit. F.F. No. 16. This finding is supported by Claimant's own testimony. N.T. at 10-11. Specifically, Claimant testified:

R    [W]hat did you tell the [s]ervice [c]enter when you filed for Unemployment benefits? What is the reason why you separated?

C    I don't have any wish to resign or (inaudible).

R    Okay. Did you call up somebody?

C    Yes. I don't recall the conversation though.

R    You don't remember. Okay. So, then that, I guess I'm showing here that you indicated lack of work.

C    Well, it does mean a lack of work.

R    I'm just asking what you told the [s]ervice [c]enter.

C    Unfortunately, I don't recall, Miss.

***

12

R       ... [The Initial Claims Management System - Claims Transcript] says reason for separation ... is lack of work.  All right.  But you don't remember what you told them, but they put in lack of work?

C       Yeah.  It would, it definitely would have been lack of work.

Id.  Claimant did not advise authorities that he voluntarily quit.  See id.  Although there was some discrepancy between Claimant's testimony and his answers on the claims form,[7] the Board clearly relied on Claimant's testimony in finding Claimant reported "lack of work" as the reason reported for his unemployment.

By not advising UC authorities that he quit his employment, Claimant received benefits in the amount of $1,578, to which he was not entitled.  Thus, the Board properly imposed a fault overpayment pursuant to Section 804(a) of the Law.

## IV. Conclusion

In sum, the Board's findings are supported by substantial evidence. The Board properly determined Claimant was ineligible for benefits having voluntarily quit his employment without a compelling and necessitous cause. Because Claimant received benefits, by his own fault, by misrepresenting that he was unemployed because of lack of work, the Board did not err by entering a fault overpayment subject to recoupment against him.

---

[7] Review of the initial claims form reveals Claimant selected "other reasons" for his unemployment.  C.R., Ex. No. 2, at 7.  However, other documents indicate he reported "lack of work."  See C.R., Ex. Nos. 5, 8.

13

Accordingly, we affirm.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Peter Navarro,                        :
                 Petitioner        :
                                   :
             v.                        :   No. 633 C.D. 2015
                                   :
Unemployment Compensation             :
Board of Review,                      :
                 Respondent       :

## O R D E R

**AND NOW**, this 23rd day of October, 2015, the order of the Unemployment Compensation Board of Review is **AFFIRMED**.

 

                                          _____
                                          ROBERT SIMPSON, Judge