Caperila Unemployment Compensation Case.
White, Appellant, v. Unemployment
Compensation Board of Review.

Argued December 13, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Joseph L. Torak,* for appellant.

*Sydney Reuben,* Assistant Attorney General, with him *Raymond Kleiman,* Deputy Attorney General, and *David Stahl,* Attorney General, for Unemployment Compensation Board of Review, appellee.

OPINION BY WATKINS, J., March 20, 1963:

This is an unemployment compensation appeal by the employer in which the Bureau of Employment Security and the Referee refused benefits on the ground that the claimant was a voluntary quit under §402-(b)(1) of the Unemployment Compensation Law, 43 PS §802(b)(1). On appeal, the Unemployment Compensation Board of Review reversed and determined that the claimant was discharged by her employer and entitled to benefits.

The claimant, Eva M. Caperila, was last employed by Howard D. White, Jr., as a haberdashery saleslady on December 22, 1961. She had been so employed for eight years. The Board found as a fact that "(3) When claimant informed the employer's wife that the customer was inquiring about the package, the employer became angry and discharged the claimant."

There is nothing in the record that justifies any discussion of willful misconduct and the issue is clearly whether this claimant left her employment voluntarily without the necessary legal cause or whether she was discharged. The ultimate fact finder is the Unemployment Compensation Board of Review. Referees are merely agents of the Board. *Franke v. Unemployment Compensation Board of Review*, 166 Pa. Superior Ct. 251, 70 A. 2d 461 (1950). The findings of the Board as to facts, if supported by the evidence, are conclusive. *Progress Mfg. Co., Inc. v. Unemployment Compensation Board of Review*, 406 Pa. 163, 176 A. 2d 632 (1962).

The key language in this case comes from the testimony that the employer became angry and screamed, saying, "I am the boss and she is the boss (employer's wife)—If you don't like it, there is the door." The claimant then left. The employer relies on an answer of the claimant when she says, "I wasn't discharged. He just told me 'there is the door'. It wasn't exactly an argument but that's what caused it, he told me 'there's the door,' and I walked out."

We must study the whole record in the light most favorable to the winning party, giving that party "the benefit of every inference which can be logically and reasonably drawn from it." *Stillman Unemployment Case*, 161 Pa. Superior Ct. 569, 575, 56 A. 2d 380 (1948).

The inference drawn by the Board, under all the circumstances in this record, that the language "there's the door" amounted to a discharge of the claimant is reasonable and logical and as the Board contends the words "discharged" or "fired" need not be used, but can be inferred from such language as "pick up your pay", "turn in your key", "pull your time card", "turn in your uniform" and the language used herein, "there's the door".

Decision affirmed.

DISSENTING OPINION BY WOODSIDE, J.:

The claimant in this case voluntarily quit her employment. She testified that she "wasn't discharged." Her employer said, "If you don't like it (the 'it' being that her employer was the boss) there is the door." This was not a direction to the employe to leave her employment, and she *knew* that she was not discharged. She was unhappy that her employer reminded her that he was the boss, and she quit. She should be denied compensation.