Robert E. Torsky (a. k. a. Robert E. Shaw), Petitioner *v* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs November 17, 1983, to Judges ROGERS, MACPHAIL and BARRY, sitting as a panel of three.

*Harry S. Geller,* for petitioner.

*Richard F. Faux,* Associate Counsel, with him, *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

OPINION BY JUDGE BARRY, April 25, 1984:

Robert E. Torsky (a/k/a Robert E. Shaw) (claimant) appeals from a decision of the Unemployment Compensation Board of Review (Board) which deter-

mined that claimant was ineligible for benefits under the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* and specifically under Section 402(b)(1), 43 P.S. §802(b)(1), on the ground that claimant voluntarily quit his job as a laborer for Hepburn Orchards (employer) during a period of approximately three months in 1982. In so finding, the Board reversed a decision of the referee, who concluded that claimant was entitled to benefits under the Law because he was involuntarily terminated by the employer. The referee relied on Section 402(e) of the Law, 43 P.S. §802(e).

Claimant was employed initially to thin peach trees and after a period of time, to pick peaches. (T. 6). The record reveals that he was not meeting production standards and was told by his employer on July 26, 1982, that if he did not meet the standards on the following day, he should not bother reporting back to work on July 28. (T. 3). On July 27, 1982, claimant missed the production standard by two buckets. When he failed to pick the required amount of peaches on July 27, claimant assumed that he was automatically terminated. The following morning, however, claimant returned to his place of employment because he wanted to talk to his employer about his employment status. At the hearing, claimant explained why he returned to his place of employment on July 28:

> Well Terry [Hepburn] [Vice-President of the orchard] told us Monday night after he had the talk with us that he would come in Tuesday night to talk with us to see what we were going to do. Well he never showed up Tuesday night after work. So the reason I went into work Wednesday morning, the 28th, was to talk to

him . . . but the foreman out there said well just go to work till Terry comes and after he comes you can go. (T. 3).

While the referee found that claimant was discharged on July 27, 1982, under reasons insufficient to establish "willful misconduct" under Section 402(e) of the Law, 43 P.S. §802(e), the Board found that his returning to his place of employment on July 28, 1982, and working for approximately one and one-half hours at minimum production standards constituted continued employment and, when claimant left the premises, his action constituted a voluntary termination under Section 402(b)(1) of the Law, 43 P.S. §802(b)(1).

In an unemployment compensation case, the issue concerning whether a termination of services is a voluntary quit or a discharge is a question of law to be determined by the Court based upon the findings of fact in the record. *Goffi v. Unemployment Compensation Board of Review*, 58 Pa. Commonwealth Ct. 422, 427 A.2d 1273 (1981); *Zibelman v. Unemployment Compensation Board of Review*, 50 Pa. Commonwealth Ct. 108, 411 A.2d 1313 (1980). An employee may assume that he has been discharged even though the employer has not specifically used words such as "fired" or "discharged". The inference may be made from other language of equal immediacy and finality. *Caperila Unemployment Compensation Case*, 200 Pa. Superior Ct. 357, 188 A.2d 759 (1963). In *Caperila*, during a heated exchange between the claimant and the employer, the employer stated, "I am the boss . . . if you don't like it, there's the door." *Id.* at 359, 188 A.2d at 760. The court there held that the employer's statement was tantamount to a discharge. That court continued that "the language

'there's the door' amount to a discharge of the claimant . . . and . . . the words 'discharged' or 'fired' need not be used, but can be inferred from such language as 'pick up your pay', 'turn in your key', 'pull your time card', 'turn in your uniform' and the language used herein, 'there's the door'.'' *Id.*

In *Sweigart v. Unemployment Compensation Board of Review,* 47 Pa. Commonwealth Ct. 421, 425-26, 408 A.2d 561, 563 (1979), we discussed the concepts of voluntary termination and discharge:

In Labor and Industry Department v. Unemployment Compensation Board of Review, 133 Pa. Super. 518, 3 A.2d 211 (1938), the Superior Court defined voluntary as leaving on one's own motion and as the opposite of discharge. ''[W]here the employe, *without action by the employer,* resigns, leaves or quits his employment, his action amounts to 'voluntarily leaving work,' . . .'' (Emphasis added.) Id. at 522, 3 A.2d at 214. In cases similar to the one before us now, we have held that in order for an employer's language to be interpreted as a discharge it must possess the immediacy and finality of a ''firing.'' Lawlor v. Unemployment Compensation Board of Review, 37 Pa. Cmwlth. 380, 385, 391 A.2d 8, 11 (1978); Rizzitano v. Unemployment Compensation Board of Review, 32 Pa. Cmwlth. 59, 62, 377 A.2d 1060, 1061 (1977). The degree of certainty in an employer's language resulting in a termination has often been the difference between those cases in which the Courts have found that an employee's termination was voluntary and those in which the employer's rather than the employee's act was deemed to effect the termination. Cf. Smith v. Unem-

ployment Compensation Board of Review, 41 Pa. Cmwlth. 57, 398 A.2d 256 (1979) (where we held an employee's resignation in response to a supervisor's telling her that he would *recommend* to the agency director that she be fired to be a voluntary termination because of the uncertainty that the director would have accepted the supervisor's recommendation) and Thomas v. Unemployment Compensation Board of Review, 14 Pa. Cmwlth. 398, 322 A.2d 423 (1974) (where we held an employee's failure to return to work after he had been told by his employer that if he did not work on a certain Sunday, which he did not do, that he need not return at all, to be a discharge.) (Emphasis in original.)

While the case before us is close, we conclude that the employer's language contained the requisite "immediacy" and "finality" of a discharge unrelated to willful misconduct. After an employer has terminated the employment relationship, courts have held that an employee cannot "quit". A resignation beyond the point when a discharge has been made effective is immaterial. *Axelrod v. Unemployment Compensation Board of Review,* 71 Pa. Commonwealth Ct. 537, 455 A.2d 289 (1983). We are of the opinion that claimant adequately explained his reasons for returning to his place of employment on July 28. The fact that he picked peaches for approximately one and one-half hours at the required production standard is of no moment. It is pure speculation for the Board to assume that he would have continued working at this standard for the remainder of the day. The claimant has the burden of proving that his departure was not voluntary, *Walker v. Unemployment Compensation Board of Review,* 27 Pa. Commonwealth Ct.

522, 525-26, 367 A.2d 366, 369 (1976), and having not prevailed before the Board, our scope of review is limited to determining whether the conclusions can be sustained without a capricious disregard of competent evidence. *Aluminum Company of America v. Theis,* 11 Pa. Commonwealth Ct. 587, 590, 314 A.2d 893, 895 (1974).

In its decision, the Board implicitly alleged error because the referee ruled upon a Section 402(e) standard rather than a Section 402(b) standard "without any waiver of the claimant, who was present or the employer, who was not present." In so stating, however, the Board ignores the mandate of 34 Pa. Code §101.107(b) which states:

> (b) The Board shall consider the issues expressly ruled upon in the decision from which the appeal was filed. However, any issue in the case, with the approval of the parties, may be determined though not expressly ruled upon *or indicated in the notice of hearing,* if the speedy administration of justice, without prejudice to any party, will be substantially served thereby and are supported by the record. (Emphasis added.)

The "notice of hearing" refers to the notice required to be sent to the parties pursuant to 34 Pa. Code §101.105(a) when, upon appeal to the Board from a referee's decision, the Board determines that a further hearing is necessary. In this case, however, the notice in question is that of the Notice of Hearing on Original Appeal (before the referee). Referring to the record, we note that "specific issues to be considered" are listed as "item 16 on attachment. Items 1, 10, and 18 may also be at issue." On the attachment, item 16 concerns Section 402(b) (voluntarily leaving work without cause of necessitous and com-

pelling nature), item 1 concerns Section 3 (whether claimant's suspension or discharge was the result of non-work related conduct and was due to claimant's own fault), item 10 concerns Section 401(d)(1), (2) (whether claimant was able and available for suitable work), and item 18 concerns Section 402(e) (whether claimant's unemployment was due to discharge for willful misconduct).

We held in *Delaware County Prison v. Unemployment Compensation Board of Review*, 72 Pa. Commonwealth Ct. 40, 455 A.2d 790 (1983), that the following language in the "Notice of Hearing on Original Appeal" received by the employer gave the employer sufficient notice of the issues which might arise at the hearing on the claimant's voluntary termination:

LIST OF ISSUES ARISING IN APPEALS PROCEEDINGS BEFORE THE PENNSYLVANIA UNEMPLOYMENT COMPENSATION BOARD OF REVIEW

*All* parties should be aware that in *all* cases involving the claimant's separation from employment, Section 402(b) . . . may be at issue. (Emphasis in original.)

*Id.* at 44, 455 A.2d at 792.

Likewise, in the instant case, the Notice of Hearing on Original Appeal was even more encompassing than that in *Delaware County Prison, id.* In finding that the claimant was terminated, the referee properly considered the provisions of Section 402(e) of the Law concerning willful misconduct. The referee was not confined to Section 402(b) of the Law merely because the Office of Employment Security determined that claimant voluntarily quit his employment. It was also not erroneous for the referee to conduct the

hearing in the employer's absence. The employer was notified of the date, hour and place of the hearing and the record reveals that the referee waited for an amount of time for the employer to appear. When he did not, the referee properly conducted the hearing in accordance with 34 Pa. Code §101.51. *See also Lee v. Unemployment Compensation Board of Review*, 73 Pa. Commonwealth Ct. 264, 265, n. 2, 458 A.2d 629, 630, n. 2 (1983).

The decision of the Board, one member dissenting, is reversed and that of the referee is reinstated and claimant is granted benefits under the provisions of the Law.

ORDER

AND Now, April 25, 1984, the decision of the Unemployment Compensation Board of Review, dated February 1, 1983, No. B-214295, is reversed and the claimant, Robert E. Torsky, is granted benefits under the Unemployment Compensation Law.