George P. Keast, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs November 22, 1985, to President Judge CRUMLISH, JR., Judge ROGERS, and Senior Judge KALISH, sitting as a panel of three.

**Held:** Affirmed. Application for reargument filed and denied.

*Norma Chase,* for petitioner.

*Samuel H. Lewis,* Associate Counsel, with him, *Charles G. Hasson,* Acting Deputy Chief Counsel, for respondent.

OPINION BY JUDGE ROGERS, January 24, 1986:

The claimant in this unemployment compensation case has appealed from the order of the Unemployment Compensation Board of Review upholding a referee's decision that he, the claimant, was not eligible for compensation because he had voluntarily left his work.

There is nothing in this record which suggests that the claimant had committed an act or acts of willful misconduct or that, if he had voluntarily left his work, he had legal cause to do so; the issue is solely that of whether the claimant was discharged from his work, as he says, or whether he voluntarily left, as the referee and the board concluded.

The findings of the board as to the facts, if supported by the record, are conclusive and we must study the record in the light most favorable to the winning party and give that party the benefit of every inference which can be logically and reasonably drawn from

it. *Shira v. Unemployment Compensation Board of Review*, 10 Pa. Commonwealth Ct. 457, 310 A.2d 708 (1973).

The claimant testified that he had been employed by Yellow Cab Company of Pittsburgh for twenty-eight years; that his last position with the employer was as data processing manager and assistant controller; that one of his duties was that of getting bills out to customers on the company's computer; that the work was done by assistants who operated the three terminals at the workplace; that in October, 1983 the president of the company laid off one of the claimant's assistants with the result that by late December 1983 his billing work which, theretofore had always been current, had fallen a month in arrears; and that his services came to an end on December 27, 1983, in the fashion described in his testimony, following:

Q.  ... did you quit this job or were you dismissed?

A.  ... I was led to the understanding that it was a mutual agreement. I was asked [by the company president] if I wanted to leave and I agreed to.

. . . .

Q.  What were you and Mr. Krupp [the president] discussing that led to this mutual agreement, as you term it.

A.  The inability of my department [to maintain] its status that it had maintained since 1967 because of personnel cuts.

Q.  Somewhere in the [record] documents, I read the statement that you thought that if you did not leave, you would be discharged ... is that your understanding?

A.  That was my understanding that morning, the way the conversation was going.

. . . .

Q. How did this conversation begin.

A. . . . This was the day after a holiday. We were shut a day, we were behind and Mr. Krupp . . . brought in a girl that didn't work for the company and told me I had to train her that day . . . and having all my . . . terminals in use I had no time that day to spend . . . with this person.

Q. What did he say?

A. He said you'll take the time . . . [and] I said where do you want me to put her? [and then he said] something to the effect he realized that [I was] a month behind [and] I said something to the effect that tell me about it [and then he said] I don't need this aggravation this morning. How would you like to leave here? [and] I said it sounds like a wonderful idea, and I put my coat on.

Q. Had it ever been broached to you be-before, the possibility of leaving?

A. No, sir, we've been having a deteriorating relationship for the last six months.

Mr. Krupp, the president, did not testify. Two employees who were called by the employer testified ineffectively to things they had heard others say concerning the incident.

The referee found the facts to be exactly as the claimant testified them to be, adding by inference findings that after his words with Mr. Krupp the claimant did not discuss the situation further before taking leave of his position and that continuing work was available to the claimant.

The referee, the board affirming, concluded that the claimant had left his employment without cause of necessitous and compelling nature and was ineligible

for compensation under Section 402(b) of the Unemployment Compensation Law, 43 P.S. §802(b). The claimant contends that he was discharged and asks us to reverse the decision that he quit as not supported by the evidence.

The principle of law which has been attached as the test for decision in this class of case is that of whether the language employed by the employer possesses the immediacy and finality of a firing; if it does, the employee has been discharged; if it does not, and the offended employee leaves, the case is one of voluntary quit. *DeMelfi v. Unemployment Compensation Board of Review*, 65 Pa. Commonwealth Ct. 577, 442 A.2d 1249 (1982); *Lawlor v. Unemployment Compensation Board of Review*, 37 Pa. Commonwealth Ct. 380, 391 A.2d 8 (1978); *Rizzitano v. Unemployment Compensation Board of Review*, 32 Pa. Commonwealth Ct. 59, 377 A.2d 1060 (1977); see *Caperila Unemployment Compensation Case*, 200 Pa. Superior Ct. 357, 188 A.2d 759 (1963).

We agree with the board's conclusion that the employer's language, ''How would you like to leave here?'' did not amount to a discharge and that the claimant's response that to leave sounded like a wonderful idea followed by his act of leaving, was a quit. The employer's words do not have the finality and immediacy of a firing in the light of all of the circumstances including that the claimant had been an indisputably effective employee for twenty-eight years; and that he and his employer had worked in apparent harmony for all of that time except for the six months immediately preceding the claimant's departure. Moreover, the claimant's testimony supports the conclusion that he did not think he was discharged; he testified that it was his ''understanding that it was a mutual agreement. I was asked if I wanted to leave and I agreed to.''

The employer's statement "how would you like to leave" lacked the immediacy of the phrase "there's the door" which the Superior Court held was a firing in *Caperila* and is more akin to the language in *Lawlor*, "Either you . . . change your ways . . . or make a decision as to what you are going to do," which we held was not a discharge.

Order affirmed.

ORDER

AND Now, this 24th day of January, 1986, the order of the Unemployment Compensation Board of Review in the above-captioned matter is affirmed.