**James W. BELL, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 22, 2006.

Decided Feb. 20, 2007.

Ordered Published April 20, 2007.

Reargument Denied April 20, 2007.

Richard O'Neill Earley, Pittsburgh, for petitioner.

Cathy A. Rothaug, Asst. Counsel and Gerard M. Mackarevich, Deputy Chief Counsel, Harrisburg, for respondent.

Renee Colbert, Pittsburgh, for intervenor, W.G. Tomko, Inc.

BEFORE: SMITH–RIBNER, Judge, and FRIEDMAN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

James W. Bell (Claimant) petitions for review of the August 23, 2006, order of the Unemployment Compensation Board of Review (UCBR), which affirmed the decision of a referee denying Claimant unemployment compensation pursuant to section 402(b) of the Unemployment Compensation Law (Law).[1] We affirm.

Claimant was employed by W.G. Tomko & Sons, Inc. (Employer) as a full-time journeyman plumber from August 31, 2002, until his last day of work on April 10, 2006. The local job center determined that Claimant was ineligible for benefits under section 402(b) of the Law, and Claimant appealed. The referee held a hearing to determine whether Claimant's separation from employment was voluntary under section 402(b) of the Law or involuntary under section 402(e) of the Law.[2]

At the hearing, Claimant testified that, on April 10, 2006, he and his supervisor, John J. Mox, argued on the phone twice; Mox blamed Claimant for the lack of materials and manpower available to complete a project, and he complained that Claimant violated Employer's protocol by personally receiving a service call from one of Employer's customers. (R.R. at 15a–16a, 19a.) According to Claimant, during the second argument, Mox told Claimant that he was not going to argue with Claimant anymore and that Claimant should "park his truck" at Employer's service shop. (R.R. at 17a.) Claimant stated that he

---

1. Act of December 5, 1936, Second Ex. Sess. P.L. (1937) 2897, *as amended,* 43 P.S. § 802(b) (providing that a claimant is ineligible for compensation for any week that his unemployment is due to his voluntarily leaving employment without cause of a necessitous and compelling nature).

2. Section 402(e) of the Law provides in relevant part that an employee shall be ineligible for compensation for any week in which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work. 43 P.S. § 802(e).

understood the phrase "park his truck" to mean that he was fired. Claimant explained that this phrase is an expression often used in the service trade to indicate that a person is fired because, generally, service technicians do not leave their trucks at the shop; they take them home. (R.R. at 17a–18a.) Claimant also stated that Mox had used this phrase to discharge another employee.

Claimant testified that after being told to "park his truck," he went home, removed his personal belongings from his truck, drove to Employer's service shop and left the truck there. (R.R. at 18a.) Claimant agreed that he did not ask Mox whether he was being discharged, but he denied that he quit his position. Claimant stated that there would be no reason for Mox to direct Claimant to park his truck at the service shop other than to discharge Claimant. (R.R. at 20a–21a.) Finally, Claimant denied receiving an offer of reemployment from Employer. (R.R. at 28a.)

Claimant also offered the testimony of James Falconio, a representative from the local plumbers union, who corroborated Claimant's assertion that the term "park the truck" is an expression often used in the trade to discharge an employee. In fact, Falconio testified that when he was discharged from a job he was told to "park the truck," and that this term "absolutely" means that a person is fired. (R.R. at 22a.)

Testifying on behalf of Employer, Mox gave his version of the events of April 10, 2006. Mox stated that he argued with Claimant about the timing of Claimant's requests for materials for his current project, and he told Claimant that, in the future, Mox would be responsible for de-

termining the materials and manpower needed for any particular job. Mox testified that, during the argument, Claimant repeatedly asked to be laid off because he and Mox "will never get along."[3] (R.R. at 23a.) According to Mox, he told Claimant that he would not lay him off because Employer had work for Claimant to do, but he said that "if [Claimant did not] like working for me or [Employer], I suggest you put your truck out front and go home." (R.R. at 23a.) Mox maintained that he would not have discharged Claimant because he was an excellent technician and because Employer had projects for Claimant to complete, but Claimant quit. (R.R. at 23a–24a.) Additionally, Mox specifically denied Claimant's assertion that Mox had used the term "park the truck" to discharge another employee and noted that the employee in question had been laid off and not discharged. In fact, Mox denied discharging anyone before, or using the term "park the truck" before. (R.R. at 27a.) Finally, Mox testified that, although he did not personally contact Claimant about returning to his position, he told Employer's owners that Claimant could have his job back. (R.R. at 25a–26a.)

After considering the evidence, the referee resolved the conflicting testimony in favor of Employer and found that: (1) Claimant made several requests to be laid off, which Mox declined; (2) the language used by Mox to park the truck *if* Claimant did not like working with Mox or Employer, provided Claimant with the option to continue his employment and did not possess the immediacy and finality of a firing; (3) Claimant did not question whether he was being discharged; (4) Mox did not intend to discharge Claimant; (5) Claimant parked his company truck in front of Em-

---

**3.** In his testimony, Claimant denied that he requested Mox to lay him off because he and Mox did not get along. In fact, Claimant also testified that Mox previously had threatened to discharge him or lay him off. (R.R. at 18a, 20a.)

ployer's shop on April 10, 2006, and did not attempt to return to work thereafter; and (6) continued work was available for Claimant had he returned. (Findings of Fact, Nos. 3–11.) The referee then concluded that Claimant voluntarily left his employment without cause of a necessitous and compelling nature, and, therefore, he was ineligible for benefits under section 402(b) of the Law. (Referee's op. at 2–3.) Claimant appealed to the UCBR, which also resolved the conflicts in the testimony in favor of Employer and affirmed and adopted the referee's decision.[4]

On appeal to this court,[5] Claimant argues that his uncontradicted testimony established that he was discharged, and the UCBR erred in concluding that Claimant voluntarily resigned his position. We disagree.

In a voluntary quit case, it is the claimant's burden to prove that his separation from employment is involuntary. *Helsel v. Unemployment Compensation Board of Review*, 54 Pa.Cmwlth. 320, 421 A.2d 496 (1980). In order for an employer's actions to constitute a discharge, the claimant must demonstrate that the employer's actions had the immediacy and finality of a "firing," but the employer need not specifically use words such as "fired" or "discharged." *Wise v. Unemployment Compensation Board of Review*, 700 A.2d 1071 (Pa.Cmwlth.1997); *Helsel*. Whether a claimant's separation from em-

ployment is voluntary or a discharge is a question of law for the court to determine from the totality of the record. *Iaconelli v. Unemployment Compensation Board of Review*, 892 A.2d 894 (Pa.Cmwlth.2006).[6]

Claimant contends that Mox's repeated threats to discharge Claimant, coupled with the "park your truck" language commonly understood in the industry to mean that a person is discharged, constitutes a discharge as a matter of law under *White v. Unemployment Compensation Board of Review*, 200 Pa.Super. 357, 188 A.2d 759 (1963). In *White*, the claimant and the employer got into a heated argument during the claimant's shift that ended with the employer stating "I am the boss and she is the boss ([the] employer's wife)—If you don't like it, there is the door." *Id.* at 760. The superior court held that a claimant's discharge from employment can be inferred from such language as "pick up your pay," "turn in your key," "pull your time card" and "turn in your uniform," *id.* at 760, and that, *under all the circumstances in this record*, the words "there is the door" amounted to a discharge. Claimant maintains that Mox's directive to "park your truck" carries with it the same immediacy and finality of a discharge as the employer's statement "there is the door" in *White* and offered him no "real choice" between remaining at work or leaving. We point out that the record in *White* was viewed in the light most favor-

---

4. In an unemployment compensation case, the UCBR is the ultimate fact finder and is empowered to make credibility determinations. *Peak v. Unemployment Compensation. Board of Review*, 509 Pa. 267, 501 A.2d 1383 (1985). Questions of credibility and the resolution of evidentiary conflicts are within the discretion of the UCBR and are not subject to re-evaluation on judicial review. *Id.*

5. Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance

with law or whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

6. In making this determination, we must examine the testimony in the light most favorable to the party in whose favor the UCBR rendered its decision. *Helsel v. Unemployment Compensation Board of Review*, 54 Pa. Cmwlth. 320, 421 A.2d 496 (1980).

able to the employee as the prevailing party. Moreover, because the circumstances are significantly different from those in *White*, Claimant's reliance on that case is misplaced.[7]

 Here, in contrast to the situation in *White*, the credible evidence established that: (1) Mox did not intend to discharge Claimant and would not have done so because Employer had work for Claimant to complete; (2) despite Claimant's repeated requests to be laid off, Mox refused to lay Claimant off; and (3) the language used by Mox provided Claimant with an option to continue his employment. Under the totality of the circumstances in this record, we are satisfied that the UCBR did not err in concluding that Mox's statement did not carry with it the immediacy and finality of a discharge; rather, Claimant voluntarily quit without necessitous and compelling cause.[8]

Accordingly, we affirm.

## ORDER

AND NOW, this 20th day of February, 2007, the order of the Unemployment Compensation Board of Review, dated August 23, 2006, is hereby affirmed.

7. Indeed, in *Monaco v. Unemployment Compensation Board of Review*, 523 Pa. 41, 565 A.2d 127 (1989), the phrase "there's the door" was not found to have the immediacy and finality of a firing. Claimant attempts to distinguish the present case from *Monaco*. In *Monaco*, our supreme court held that: the employees had voluntarily quit their employment when they left during work hours despite the employer's ultimatum that if the employees did not like the situation, "there's the door"; and if any of the employees walked out the door, they would be deemed to have quit their jobs. 523 Pa. 41, 44, 565 A.2d 127, 129 (1989). The court held that under the circumstances in the record the employer's language did not provide the finality and immediacy required to establish a discharge because the employer allowed the employees the opportunity to remain employed by completing their shift but reasonably declined to allow the employees to leave during their shift. Id. at 44, 565 A.2d at 129.

8. Claimant has not challenged the UCBR's conclusion that Claimant did not have a necessitous and compelling reason for his resignation.