## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Ronald K. Mathieu, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1442 C.D. 2017 |
| | : | SUBMITTED: September 12, 2018 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE ELLEN CEISLER, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                                        FILED: October 5, 2018

Ronald K. Mathieu (Claimant) petitions for review of the September 18, 2017 Order of the Unemployment Compensation Board of Review (Board), which affirmed the decision of a Referee denying Claimant unemployment compensation (UC) benefits. The Board concluded that Claimant was ineligible for UC benefits under Section 402(b) of the Unemployment Compensation Law (Law)[1] because he voluntarily quit his employment without cause of a necessitous and compelling nature. We affirm.

## **Background**

The following background is a summary of the Referee's Findings of Fact and Conclusions of Law, which the Board adopted and incorporated in their entirety.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b). Section 402(b) of the Law provides that an employee shall be ineligible for UC benefits for any week "[i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." 43 P.S. § 802(b).

Claimant worked for H & H Castings (Employer) as a full-time maintenance electrician from February 13, 2012 through March 3, 2017. Bd.'s Findings of Fact (F.F.) No. 1. Employer has an unwritten policy, of which Claimant was aware, in which physical fighting is not tolerated. *Id.* No. 2. Although Employer has no written policy prohibiting physical contact between employees, Employer has verbally advised its employees that it has zero tolerance for such conduct. *Id.* No. 3. Employer typically conducts an investigation and administers discipline for physical contact between employees based on the circumstances. *Id.* Employer has also verbally informed its employees that it has an open-door policy whereby an employee can to go to his or her supervisor, the vice president of operations, the human resources coordinator, or the owner of the company to resolve conflicts. *Id.* No. 4.

Claimant had an ongoing, contentious relationship with a co-worker, Robert Thome, who is known as "Whitey." *Id.* No. 5. On March 1, 2017, Whitey purposefully rammed a metal cart into Claimant's arm. *Id.* No. 6. Five minutes later, Claimant entered Whitey's work area, allegedly to bring another co-worker a soda. Claimant confronted Whitey and told him, "[T]his is your free pass. This is the last time. You'll never get away with that again," after which Whitey elbowed Claimant in the stomach. *Id.* No. 7; Notes of Testimony (N.T.), 5/25/17, at 8-10, 17.

That same day, Claimant reported the incident to his Employer who began an investigation. F.F. No. 8. Employer determined that there was physical contact between the two men and that Whitey acted in self-defense during the second altercation. *Id.* Following its investigation, Employer suspended Whitey for three days without pay and suspended Claimant for one day without pay. *Id.* No. 9. Claimant served his one-day suspension on March 2, 2017. *Id.*

When Claimant returned to work on March 3, 2017, he placed a written request on his supervisor's desk, asking to take his two weeks of remaining vacation time. *Id.*

No. 10. Claimant advised his supervisor that he would not work under these conditions any longer and that he was giving his two weeks' notice. *Id.* No. 11; N.T., 5/25/17, at 11.[2] Claimant told his supervisor that he was dissatisfied with the discipline Employer had administered to him and Whitey. F.F. No. 12. Claimant believed that Whitey should have been fired and that Claimant's suspension was unfair. *Id.* Nos. 12, 14. Claimant's supervisor asked Claimant to reconsider his decision to quit, but Claimant refused to do so. *Id.* No. 13. Claimant did not use Employer's conflict resolution process before quitting, while continuing work was available. *Id.* No. 15.

Claimant filed a claim for UC benefits, claiming he quit due to a hostile work environment. The Service Center determined that Claimant was ineligible for UC benefits under Section 402(b) of the Law because he voluntarily quit without a necessitous and compelling cause and did not exhaust all alternatives before quitting. Notice of Determination, 4/14/17, at 1.

Claimant timely appealed to the Referee, who held a hearing on May 25, 2017. Employer, acting *pro se*, participated via telephone and presented the testimony of Earl Rapp, Claimant's supervisor, and Melinda Myers, Employer's human resources coordinator. Claimant appeared in person and testified on his own behalf.

Following the hearing, the Referee determined that Claimant voluntarily quit his employment because he was displeased with the discipline that Employer administered to him and Whitey following the March 1, 2017 altercations. Ref.'s Order at 2. Although the Referee recognized that harassment may justify a voluntarily quit, the Referee stated that "where the employer has a mechanism in place to deal with the harassment, the claimant must make a good[-]faith effort to employ that mechanism to resolve the problem." *Id.* at 3. The Referee credited the testimony of Employer's

---

[2] Claimant testified: "At that point I said, I can't do it no more, that I'm giving my two weeks' notice." N.T., 5/25/17, at 11; *see id.* at 13-14.

3

witnesses that Claimant was aware of Employer's open-door policy for resolving employee conflicts. *Id.* The Referee determined that Claimant did not use Employer's conflict resolution process and failed to exhaust all alternatives in a good-faith effort to remain employed before quitting. *Id.* Therefore, the Referee concluded that Claimant was ineligible for benefits under Section 402(b) of the Law. *Id.*

Claimant timely appealed to the Board, which affirmed the Referee's Order. The Board adopted the Referee's Findings of Fact and Conclusions of Law and further concluded:

> Although [C]laimant testified that he was harassed and there were fights at the workplace, the Board does not find his testimony credible. Rather, [C]laimant's supervisor only testified to personality conflicts between [C]laimant and his co[-]worker. [E]mployer's witnesses credibly testified that they investigated the incident and suspended [C]laimant and the other co[-]worker involved in the incident following [its] policy prohibiting violence. To this end, [C]laimant admitted to his supervisor that he confronted the co[-]worker and told him that this is your free pass, you'll never get away with that again. As [C]laimant quit the day after he was suspended, he did not allow time to see if the work environment improved after the suspensions.

Bd.'s Op. at 1. Claimant now petitions for review of the Board's Order.[3]

## **Issues**

On appeal, Claimant raises the following issues: (1) whether the evidence established that Claimant had necessitous and compelling cause to voluntarily quit his

---

[3] Our scope of review is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether the necessary factual findings are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

4

employment; and (2) whether the record contains substantial evidence to support the Board's Findings of Fact 7, 8, and 15.[4]

## Analysis

### 1. Necessitous and Compelling Cause

Claimant first contends that the evidence established that he had a necessitous and compelling cause to voluntarily quit his employment due to ongoing verbal and physical harassment by a co-worker. We disagree.

It is well settled that the Board is the ultimate factfinder in UC cases and its findings "are conclusive on appeal so long as the record, taken as a whole, contains substantial evidence to support those findings." *Hessou v. Unemployment Comp. Bd. of Review*, 942 A.2d 194, 198 (Pa. Cmwlth. 2008). "Questions of credibility and the resolution of evidentiary conflicts are within the discretion of the [Board] and are not subject to re-evaluation on judicial review." *Bell v. Unemployment Comp. Bd. of Review*, 921 A.2d 23, 26 n.4 (Pa. Cmwlth. 2007).

An employee alleging that he or she voluntarily quit for a necessitous and compelling reason "must prove that: (1) circumstances existed that produced real and

---

[4] The challenged Findings of Fact state:

7. Approximately 5 minutes [after the cart incident], [C]laimant entered Whitey's work area, allegedly to bring a co-worker a sod[a]. [C]laimant confronted Whitey, and another altercation ensued.

8. [E]mployer initiated an investigation into the incident between [C]laimant and Whitey. [E]mployer determined that there was physical contact between the two, but the investigation showed that Whitey acted out of self-defense during the second altercation.
. . .

15. [C]laimant did not utilize the conflict resolution process prior to quitting while continuing work was available.

F.F. Nos. 7, 8, and 15. Because Claimant did not specifically challenge the Board's remaining Findings of Fact, they are binding on appeal. *See Salamak v. Unemployment Comp. Bd. of Review*, 497 A.2d 951, 954 (Pa. Cmwlth. 1985).

substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the employee acted with ordinary common sense; and (4) the employee made a reasonable effort to preserve his or her employment." *Wert v. Unemployment Comp. Bd. of Review*, 41 A.3d 937, 940 (Pa. Cmwlth. 2012). Harassment by a co-worker can constitute a necessitous and compelling reason to quit one's employment. *Comitalo v. Unemployment Comp. Bd. of Review*, 737 A.2d 342, 344 (Pa. Cmwlth. 1999). However, "[p]ersonality conflicts, absent an intolerable work atmosphere, do not amount to a necessitous and compelling cause for leaving one's employment." *Wert*, 41 A.3d at 940; *see First Fed. Sav. Bank v. Unemployment Comp. Bd. of Review*, 957 A.2d 811, 816 (Pa. Cmwlth. 2008) (stating that "[r]esentment of a reprimand, absent unjust accusations, profane language or abusive conduct[,] . . . mere disappointment with wages[,] . . . and personality conflicts, absent [an] intolerable working atmosphere" are not necessitous and compelling reasons for voluntarily quitting).

Here, the Board concluded that Claimant voluntarily quit, not because of harassment, but because he was dissatisfied with Employer's disciplinary action following the March 1, 2017 altercations. While Claimant testified that he quit because Whitey was verbally and physically harassing him, the Board disbelieved Claimant's testimony. Bd.'s Op. at 1. Rather, the Board credited Employer's testimony that Claimant and Whitey merely had a history of "personality conflicts," which is not a necessitous and compelling reason to voluntarily quit. *See Wert*, 41 A.3d at 940; *First Fed.*, 957 A.2d at 816. Mr. Rapp testified that based on his discussions with Claimant and other employees, "I knew there was some things going on [between Claimant and Whitey]. There was [sic] personality conflicts. I didn't know that things were as physical as [Claimant is] describing them." N.T., 5/25/17, at 16; *see id.* at 19. Ms. Myers, the human resources coordinator, also testified: "[W]hen we investigated th[e

6

March 1, 2017] incident[,] we did not deem this as a physical fight.  There were nudges and bumps, not rammings and hand to hand combat." *Id.* at 15.[5]

We conclude that the record contains substantial evidence to support the Board's determination that Claimant voluntarily quit because he was dissatisfied with Employer's punishment following the March 1, 2017 altercations.  Claimant's own testimony corroborated Employer's testimony that on the day he resigned, Claimant was upset that Employer suspended him and did not discharge Whitey.  N.T., 5/25/17, at 11.  Mr. Rapp testified that Claimant stated that he "didn't feel that [Whitey] had enough punishment, and [Claimant] was unfairly punished. . . . [Claimant] didn't think he should have [had] any time off for the incident." *Id.* at 16.  This Court has held that dissatisfaction with an employer's disciplinary action is not a necessitous and compelling reason to voluntarily terminate one's employment. *Gioia v. Unemployment Comp. Bd. of Review*, 661 A.2d 34, 37 (Pa. Cmwlth. 1995).  Moreover, an employer's refusal to discharge a co-worker at the claimant's request constitutes mere dissatisfaction with working conditions and is not a compelling reason for voluntarily quitting. *Oller v. Unemployment Comp. Bd. of Review*, 426 A.2d 741, 742 (Pa. Cmwlth. 1981).

Claimant also failed to establish that he made a reasonable effort to preserve his employment before voluntarily quitting.  Ms. Myers explained Employer's conflict resolution policy as follows:

> We do not have a written policy but we had verbally gone over that with employees in employee meetings explaining to them that they can go to their direct supervisor *and after that* or if they don't feel comfortable going to their direct supervisor, *then they can go to [the] Vice President of Manufacturing and Operations, and then they also can come to [me]* .

[5] Ms. Myers testified that Employer's investigation revealed that during the second altercation, Whitey "was doing the bumping with the elbows as [a] defense to get away from [Claimant] who was towering over him and trying to . . . intimidate him."  N.T., 5/25/17, at 15.

7

*. . and then also . . . [to] the Owner [and] President of the company.* We consider it an open-door policy.

N.T., 5/25/17, at 14 (emphasis added). Although Claimant had discussed the harassment with his immediate supervisor, he never reported it to upper-level management pursuant to Employer's policy. *Id.* at 12, 14. Moreover, Claimant quit the day after serving his one-day suspension and before Whitey had returned to work from his three-day suspension. Therefore, we agree with the Board's conclusion that Claimant "did not allow time to see if the work environment improved after the suspensions." Bd.'s Op. at 1.

### 2. Board's Findings of Fact 7, 8, and 15

Next, Claimant contends that the Board erred in rejecting Claimant's testimony regarding the March 1, 2017 altercations when Claimant was the only eyewitness to testify about what transpired. Specifically, Claimant challenges the Board's findings that: Claimant confronted Whitey in the second altercation (F.F. No. 7); Whitey acted out of self-defense in the second altercation (F.F. No. 8); and Claimant did not use Employer's conflict resolution process before quitting (F.F. No. 15).[6]

Claimant's challenges to these Findings of Fact are merely challenges to the Board's credibility determinations. Contrary to Claimant's assertion on appeal, the Board may reject the testimony of any witness, even if the witness's testimony is uncontradicted. *Russo v. Unemployment Comp. Bd. of Review*, 13 A.3d 1000, 1003 (Pa. Cmwlth. 2010); *see Stockdill v. Unemployment Comp. Bd. of Review*, 368 A.2d 1341, 1343 (Pa. Cmwlth. 1977) ("[T]he Board . . . may reject even uncontradicted testimony if it is deemed not credible or worthy of belief.").

---

[6] In his brief, Claimant also argues that the Board capriciously disregarded competent evidence. Claimant's Br. at 19-20. However, in his Petition for Review, Claimant asserted only that the Board's determination was unsupported by substantial evidence. Pet. for Review, 10/17/17, ¶ 5. Therefore, because Claimant did not raise the capricious disregard issue in his Petition for Review, it is waived. *See Oliver v. Unemployment Comp. Bd. of Review*, 29 A.3d 95, 96 (Pa. Cmwlth. 2011).

Here, the Board credited the testimony of Employer's witnesses regarding the March 1, 2017 altercations between Claimant and Whitey. Although Mr. Rapp and Ms. Myers were not present during either incident, their testimony was based on their discussions with Claimant following the altercations as well as their investigation of the incidents. Based on that testimony, the Board found that *Employer determined* that Claimant confronted Whitey and Whitey acted out of self-defense in the second altercation. The Board acted within its discretion in crediting Employer's testimony over Claimant's. *See Bell*, 921 A.2d at 26 n.4. We conclude that the testimony of Mr. Rapp and Ms. Myers was sufficient to support Findings of Fact 7 and 8.

With regard to Finding of Fact 15, Ms. Myers' testimony, which was credited by the Board, was sufficient to support the Board's finding that Claimant failed to avail himself of Employer's conflict resolution process, as discussed above. *See* N.T., 5/25/17, at 14.

## Conclusion

Accordingly, because we conclude that Claimant is ineligible for benefits under Section 402(b) of the Law, we affirm the Board's Order.

_____
ELLEN CEISLER, Judge

9

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ronald K. Mathieu,             :
         Petitioner     :
                          :
       v.             :  No. 1442 C.D. 2017
                          :
Unemployment Compensation   :
Board of Review,           :
         Respondent   :

O R D E R

AND NOW, this 5th day of October, 2018, the Order of Unemployment Compensation Board of Review, dated September 18, 2017, is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge