# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wizzard Drain Cleaning, LLC,      :
            Petitioner      :
     :
           v.      :    No. 1366 C.D. 2017
Unemployment Compensation      :    Argued: December 11, 2018
Board of Review,      :
          Respondent      :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE ELLEN CEISLER, Judge


**OPINION NOT REPORTED**


MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER               FILED: January 4, 2019

Wizzard Drain Cleaning, LLC (Employer) petitions for review of an August 31, 2017 Order (Order) of the Unemployment Compensation Board of Review (Board) reversing the decision of a Referee and finding Shane Huyett (Claimant) not ineligible for unemployment compensation (UC) benefits under Section 402(e) of UC Law.[1] Employer argues that the Board erred when it reversed the Referee and found that Claimant had been discharged. However, because the facts as found by the Board support its conclusion that Claimant was discharged, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) provides that an employee is ineligible for compensation in any week "[i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." *Id.*

Claimant worked as a full-time drain-cleaning technician for Employer from October 5, 2015, to March 26, 2017. (Board Opinion (Op.), Finding of Fact (Board's FOF) ¶ 1.) Claimant filed for UC benefits on April 12, 2017, and, by Notice of Determination dated May 2, 2017 (Determination), the UC Service Center notified Claimant he was not ineligible for benefits. (Certified Record (C.R.) Item Nos. 2, 5.) Employer timely appealed the Determination, and a hearing was held before the Referee on June 1, 2017. (C.R. Item No. 6.) Employer, represented by counsel, and Claimant, pro se, testified[2] before the Referee about the events leading up to Claimant's last day of employment and whether Claimant voluntarily quit or was discharged. Claimant was the on-call employee for emergencies when Employer forwarded Claimant a plumbing call on Sunday, March 26, 2017. Claimant completed the call, but nonetheless argued with Employer about the responsibilities of his employment in a series of text messages. The interpretation of those messages are at the center of the Referee's and Board's diverging determinations of whether Claimant was discharged.

At the hearing, Employer, through its owner (Owner), testified that he sent a text message to Claimant on March 26, 2017, informing him of an emergency plumbing call in Harrisburg. (Reproduced Record (R.R.) at 13a, 16a.) Owner explained that he had a policy of one-hour response times to emergency calls and, in his opinion, Claimant, who was in Mount Joy with his girlfriend on March 26, was too far away to complete emergency calls within that time. (*Id.* at 13a-14a, 16a.) Owner stated he spoke with Claimant over the phone about Claimant's response time and told him they would discuss the issue on Monday. (*Id.* at 13a.) Owner went on

---

[2] Claimant brought a witness to the hearing as well; however, the Referee did not allow the witness to testify, finding that the witness's testimony would be merely duplicative of Claimant's testimony. (Reproduced Record (R.R.) at 25a.)

to read into the record a subsequent series of text messages between himself and Claimant on March 26 and 27. In the text message that followed their conversation over the phone, Claimant wrote that the customer was "good" and that Claimant and Owner did not "need to talk about shit" because the response time "is within the hour regardless" of where Claimant was located or what he was doing. (*Id.* at 16a.) Claimant also expressed his dissatisfaction with Owner continuing to send him on plumbing calls because his "hours are everything" and he has "no life." (*Id.*) Owner responded that he was "not going through this with [Claimant] anymore," that whenever Claimant "[got] with a girl[,] everything is an issue," and Claimant could "try this shit with someone else . . . I'm over it." (*Id.*) Owner explained that Claimant was not discharged by that text message, but nonetheless did not show up to work the next day on March 27, 2017. (*Id.* at 11a-12a.) Owner also testified that Claimant had a company vehicle, cell phone, and necessary equipment for completing calls. (*Id.* at 17a.) Owner stated he retrieved the company vehicle from Claimant's possession in the afternoon of March 27, after Claimant did not arrive for work that day, and sent Claimant a text message at 11:36 a.m. notifying him that he must turn in his work materials. (*Id.* at 18a.) Owner denied ever telling Claimant in exact words "that he was fired," or ever having the intent to fire Claimant on March 26. (*Id.* at 12a, 17a.)

Claimant testified that he was discharged from employment via the text messages he received from Owner. Claimant explained that he had responded to the emergency call in Harrisburg within 40 minutes, although he was displeased that the call was for a plumbing emergency when his specialty was drain cleaning. (*Id.* at 19a-20a.) Claimant agreed that Owner first indicated the two parties would discuss their disagreement on March 27; however, when Owner sent the text message that

3

he was "done,"[3] Claimant understood that to mean that he was discharged effective immediately. (*Id.* at 20a, 24a.) Claimant further explained that he believed he was discharged when the company vehicle that had been in his possession was missing on either the evening of March 26 or the morning of March 27, and he received a message instructing him to return his work materials. (*Id.*)

Following the hearing, by decision dated June 14, 2017, the Referee found Claimant ineligible under Section 402(e) of UC Law. (Referee Decision at 2-3.) The Referee reasoned that the text message in which Employer stated that he was "done" was not a discharge. (*Id.* at 2.) Therefore, Claimant was still employed on March 27, Employer discharged him at that time for "failing to report to work" and meet with Employer "regarding the on-call issue," and then Employer proceeded to take possession of the company vehicle. (Referee Decision, Findings of Fact (Referee's FOF) ¶¶ 7-9.) The Referee determined that Claimant's action of not arriving for work on March 27 constituted willful misconduct for which he was discharged.

---

[3] Employer presented at the hearing a cell phone record of the text message conversation, but Claimant objected on the basis that the document did not show the full content of each message. (R.R. at 15a.) The Referee acknowledged Claimant's concern and stated that although he would not exclude the document, Owner should read the messages from his cell phone into the record. (*Id.*) Owner, then reading the text messages from his phone, testified that he told Claimant, "you can try this shit with someone else . . . **I'm over it**." (*Id.* at 16a (emphasis added).) Claimant, summarizing the conversation in later testimony, stated that Owner informed Claimant "you can try [this] with another [e]mployer. **I'm done**." (*Id.* at 20a (emphasis added).) Although Claimant objected that Owner did not read all the messages in his testimony, the Referee admitted the text messages into the record as they were read by Owner. (*Id.* at 16a-17a.) Despite this, both the Referee and the Board quoted the relevant text message as "[y]ou can try this shit with another company. **I am done**." (Referee's FOF ¶ 6, Board's FOF ¶ 9 (emphasis added).) On appeal to this Court, Employer maintains that the text message said "**I'm over it**," whereas the Board maintains that it said "**I am done**." (Employer's Brief (Br.) at 11; Board's Br. at 6 (emphasis added).) Nonetheless, neither party argues that this discrepancy has any bearing on the determination before us. Moreover, the Board's finding is conclusive and the exact language used does not alter our analysis and conclusion.

Claimant timely appealed to the Board, which reversed the Referee's Decision. The Board found that although Owner first indicated he would discuss the on-call response time issue with Claimant on March 27, Employer discharged Claimant in the text messages that followed. (Board's FOF ¶¶ 7, 9-11.) The Board determined that Employer took possession of the company vehicle sometime between the evening of March 26 and the morning of March 27. (*Id.* ¶ 11.) Finding Employer not credible in Owner's testimony that he did not intend to discharge Claimant, the Board stated the "record is clear that on March 26, 2017, the [Owner] made an unambiguous statement, via text message, that he was 'done,'" and later told Claimant to "turn in [his] stuff," at which point Claimant's employment was terminated. (Board Op. at 2.) The Board also rejected the Referee's determination that Claimant engaged in willful misconduct, finding credible Claimant's testimony as to why he did not arrive for work on March 27.[4]

On appeal,[5] Employer argues that the Board erred in finding Claimant not ineligible for UC benefits because Claimant was not discharged but voluntarily quit. (Employer's Brief (Br.) at 11.) Employer urges this Court to interpret the evidence

---

[4] Specifically, the Board's reasoning regarding its rejection of the Referee's finding of willful misconduct is as follows:

> [T]he [E]mployer failed to meet [its] burden of proof that the [C]laimant engaged in willful misconduct. The [E]mployer asserts that the [C]laimant failed to report to work on March 27, 2017, but also alleges that [it] never terminated the [C]laimant. Furthermore, the Board finds the [C]laimant credible that his work vehicle was retrieved from [his] apartment either the evening of March 26, 2017, or Monday, March 27, 2017. Employer failed to establish what conduct the [C]laimant had engaged in to constitute willful misconduct.

(Board Op. at 3.)

[5] Our review is limited to determining "whether constitutional rights were violated, whether an error of law was committed[,] or whether necessary findings of fact are supported by substantial competent evidence." *Allen v. Unemployment Comp. Bd. of Review*, 189 A.3d 1128, 1133 n.3 (Pa. Cmwlth. 2018).

presented before the Referee about the text messages sent and relationship between the parties as establishing that Employer did not discharge Claimant. Alternatively, Employer asserts that Claimant engaged in willful misconduct when he did not come to work on March 27, at which time Employer justifiably discharged him. (*Id.* at 13-14.) Citing to a history of disrespect and disagreement between the two parties during the course of employment, Employer contends that if Claimant was in fact discharged, it was for willful misconduct. (*Id.* at 14-15.)

The Board responds that Owner's language and actions make clear that Claimant was discharged at that time and did not leave employment voluntarily. (Board's Br. at 6.) The Board contends that Owner's language in the text messages and action in taking possession of the company vehicle deprived Claimant of a choice regarding his employment and constituted discharge. (*Id.* at 7-8.) Further, noting that Owner never testified before the Referee that Claimant was terminated for not coming to work on March 27, the Board asserts Employer did not meet its burden of establishing that Claimant was discharged for willful misconduct. (*Id.* at 10.)

Section 402(b) of UC Law states that an employee is ineligible for benefits for any week "[i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." 43 P.S. § 802(b). The issue of whether an employee was discharged "is a question of law to be determined by this Court based upon the findings of fact in the record." *Torsky v. Unemployment Comp. Bd. of Review*, 474 A.2d 1207, 1209 (Pa. Cmwlth. 1984). An employer need not specifically use the word "discharged"; thus an employee may assume discharge based upon inferences from "other language of equal immediacy and finality." *Id.* It is the Board, and not the referee, that "is the ultimate fact finding body and arbiter

of credibility in [UC] cases." *Waverly Heights, Ltd. v. Unemployment Comp. Bd. of Review*, 173 A.3d 1224, 1227 (Pa. Cmwlth. 2017). Further, the Board's findings are conclusive if they are supported by substantial evidence, and we must "giv[e] to the party who prevailed before the Board the benefit of every inference which can logically and reasonably be drawn from the record." *Chinn v. Unemployment Comp. Bd. of Review*, 426 A.2d 1250, 1252 (Pa. Cmwlth. 1981) (citation omitted). Our deference to the Board's findings and credibility determinations is of particular importance in cases where the Board is faced with a "close fact pattern and the . . . narrow issue of ascertaining and interpreting" what was actually said between an employer and a claimant. *Id.* Therefore, we consider the totality of the circumstances in the facts found by the Board. *Phila. Parent Child Ctr., Inc. v. Unemployment Comp. Bd. of Review*, 403 A.2d 1362, 1363 (Pa. Cmwlth. 1979).

Given this, our resolution of whether an employee voluntarily quit or was discharged turns on the unique circumstances of the parties. For example, in *Keast v. Unemployment Compensation Board of Review*, this Court affirmed the Board's determination that an employee voluntarily quit, given the past relationship between the parties. 503 A.2d 507, 509 (Pa. Cmwlth. 1986). The employee, a data processing manager and assistant controller, had fallen a month behind on billing after the layoff of one of his assistants. *Id.* at 508. As a result, the employee testified that his previously good relationship with the employer had started to deteriorate over six months. In a dispute on the morning of the employee's last day of work, the employer said "how would you like to leave here?," to which the employee replied, "it sounds like a wonderful idea," and left. *Id.* at 508-09. We acknowledged that the Board had credited the employee's testimony that he believed his separation from employment to be a mutual understanding, which ran contrary to a finding of

7

discharge. *Id.* at 509. As such, we agreed with the Board that the employer's statement did "not have the finality and immediacy of a firing in light of all the circumstances," including the employee's good work record and relationship with the employer for the greater part of 25 years. *Id.*

In other circumstances, we have found the immediacy of discharge in an employer's language, such as in *Sweigart v. Unemployment Compensation Board of Review*, 408 A.2d 561 (Pa. Cmwlth. 1979). The employee in that case, a nurse's aide, had a history of personnel issues with the employer. *Id.* at 562. After one particular dispute, the employer sent the employee a letter detailing the issues between the parties and stating "I am requesting that you come to a realization that [this] is not a suitable place of employment for you. Therefore, I would similarly request your resignation effective immediately. . . . [W]e have no other recourse in this matter," after which the employee resigned. *Id.* Reversing the Board's determination, we found that the employee was discharged. *Id.* at 564. We reasoned that the employer's language stating there was no recourse other than an immediate resignation had an immediacy and finality that deprived the employee of a choice to continue employment. *Id.* at 563-64. *See also White v. Unemployment Comp. Bd. of Review*, 188 A.2d 759, 760 (Pa. Super. 1963) (affirming the Board's finding that an employee reasonably believed she was discharged after employer told her "[i]f you don't like it, there is the door").

In circumstances similar to the present case, this Court found language of immediacy and finality amounting to a discharge through an employer's text message to an employee. *Mark Millwright & Rigging, Inc. v. Unemployment Comp.*

8

*Bd. of Review* (Pa. Cmwlth., No. 1163 C.D. 2011, filed Jan. 12, 2012).[6]  In *Mark Millwright*, the employee questioned employer about his compensation for transportation time and, during the course of the text message conversation, the employer told the employee, "I don't want, warrant or need your crap. . . .  Why don't you do yourself a favor and find somewhere else to work."  *Id.*, slip op. at 3 (emphasis omitted).  The employee never responded to the message and never returned to work.  *Id.*  The Board, finding the employee credible, determined this language had the requisite finality to be a discharge.  *Id.* at 4.  We affirmed, reasoning that the employee's credited testimony supported the Board's reasonable conclusion that, given the totality of the circumstances, the employer discharged the employee. *Id.* at 7.

Much like in *Mark Millwright*, we reach a similar conclusion here.  After reviewing the totality of the evidence presented and the Board's findings of fact, which are supported by substantial evidence and therefore conclusive, we agree that Claimant was discharged by Employer.  The language that Owner used in the text messages on March 26 and 27 conveyed the immediacy and finality necessary to constitute a discharge.  Claimant himself concluded that Employer had discharged him.  *Roberts v. Unemployment Comp. Bd. of Review*, 432 A.2d 646, 648 (Pa. Cmwlth. 1981) (citation omitted).  While Owner may have first told Claimant that they would defer the discussion of their disagreement until Monday, March 27, the dispute escalated when Owner finally told Claimant he was "done," and later demanded Claimant return his work materials.  (R.R. at 20a.)  Unlike in *Keast*, Owner's language and actions here did not reasonably leave Claimant with an option

_____

[6] *Mark Millwright*, an unreported opinion, is cited for its persuasive value in accordance with Section 414(a) of the Commonwealth Court's Internal Operating Procedures.  210 Pa. Code § 69.414(a).

9

to continue employment, but instead had the immediacy and finality of discharge, such as in *Sweigart* and *Mark Millwright*. As evidenced by the parties' text messages and testimony, Employer and Claimant had disputes about such issues before. Based on the deteriorating employment relationship, Claimant interpreted "[y]ou can try this shit with another company. I am done," as an immediate discharge which left Claimant without a choice to continue his employment. (Board's FOF ¶ 9.) Moreover, Claimant's interpretation of this language was confirmed by the fact that after Owner said he was done, Owner, without further explanation, told Claimant to "turn in his stuff." (R.R. at 18a, 20a.) While the immediacy and finality of Owner's language alone establishes discharge, any question as to that matter was resolved by Claimant's credited testimony that the company vehicle was no longer at his apartment on the morning of Monday, March 27. Although Owner testified that he did not intend to terminate Claimant's employment, and only took possession of the company vehicle after Claimant did not arrive for work on March 27, the Board did not credit this testimony. *See Duquesne Light Co. v. Unemployment Comp. Bd. of Review*, 648 A.2d 1318, 1320 (Pa. Cmwlth. 1994) (noting that while "there may be record evidence to the contrary, findings of fact if supported by substantial evidence are conclusive" and credibility determinations are in the Board's discretion). Employer essentially asks us to re-weigh the evidence in order to interpret the facts in a manner consistent with its Owner's testimony, which we are unable to do. The totality of the circumstances, as established by the Board's conclusive facts and credibility determinations, support a finding that Owner's words and actions on March 26 and 27 had the requisite immediacy and finality of a discharge.

Because we have determined that Claimant was discharged, we do not reach Employer's second argument that Claimant engaged in willful misconduct for which

he was discharged when he did not come to work on March 27.  Therefore, because the facts as found by the Board support its conclusion that Claimant was discharged, we affirm the Board's Order.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wizzard Drain Cleaning, LLC, :
     Petitioner :
        :
     v.    : No. 1366 C.D. 2017
Unemployment Compensation :
Board of Review,    :
     Respondent :

# **O R D E R**


 **NOW**, January 4, 2019, the August 31, 2017 Order of the Unemployment Compensation Board of Review is **AFFIRMED**.


         _____

         **RENÉE COHN JUBELIRER,** Judge